BERMAN LAW FIRM
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910
Telephone: (671) 477-2778
Facsimile: (671) 477-4366
Email: djberman@pacificlawyers.law

Attorneys for Plaintiff:
*E.M.B. ELECTRICAL INC.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF GUAM**

| | |
|---|---|
| E.M.B. ELECTRICAL INC.,<br>Plaintiff,<br>vs.<br>GRANITE-OBAYASHI, a Joint Venture,<br>Defendant. | CASE NO. 1:24-cv-00006<br><br>**COMPLAINT FOR BREACH OF CONTRACT AND TO COMPEL ARBITRATION** |

JURISDICTION

1. This Court has subject matter jurisdiction pursuant to the 28 U.S.C. §1331 and 28 U.S.C. §1332. The Court has pendant jurisdiction and supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C. §1367.

2. The Federal Arbitration Act at 9 U.S.C. §1 *et seq.* ("FAA") governs the enforcement of the right to arbitrate all claims of Plaintiff set forth hereinbelow.

3. The parties are citizens of a different state or territory and the amount in controversy exceeds $75,000.00.

VENUE

4. The contract at issue was performed and executed in Guam. Venue therefore lies in the United States District Court of Guam pursuant to 40 U.S.C. §3133(b)(3)(B) and 28 U.S.C. §1391(b)(2).

PARTIES

5. Plaintiff E.M.B. Electrical Inc. ("EMB") is a Guam corporation, organized and existing under the laws of the Territory of Guam, with its principal place of business in Guam. EMB is a licensed contractor authorized to do business in Guam.

6. Defendant Granite-Obayashi, a Joint Venture ("GOJV") is a partnership consisting of a joint venture organized by individual partners under the laws of California and Japan, respectively, with their principal places of business in California and Japan, respectively and authorized to do business in Guam.

STATEMENT OF FACTS

7. Defendant GOJV was the Prime Contractor on a federal project undertaken by Naval Facilities known as U.S. Marine Corps Camp Blaz, and more specifically identified as: J-001B Finegayan Utilities and Site Improvements Phase I in Yigo, Guam (the "Project").

8. On and after October 11, 2017, GOJV contracted with Plaintiff EMB to furnish labor, materials and equipment required to complete a portion of the work included in the Prime Contract (the "Subcontract"). *See* Subcontract dated October 11, 2017, attached as Exhibit "A".

9. Based on their Subcontract and subsequent agreements, GOJV agreed to pay EMB for all of its work requested by, directed and agreed to by GOJV.

10. GOJV has failed to pay EMB for its work in the amount of $2,102,649.80, and a separate retention amount of $763,934.31.

11. As of the date of this Complaint, EMB is owed $2,866,584.11 plus interest.

12. On information and belief, GOJV used EMB's work and invoices to further its own profits in the form of the GOJV Requests for Equitable Adjustment to Naval Facilities, for which GOJV has failed and refused to pay EMB.

13. GOJV certified as true and accurate the amount of EMB work and invoices to Naval Facilities, which amount GOJV has nevertheless failed and refused to pay to EMB.

FIRST CLAIM

14. Plaintiff EMB repeats and realleges paragraphs 1 through 13 above as though fully set forth in this claim.

15. EMB has performed all of its obligations under the Subcontract and GOJV's requests for additional work and materials.

16. GOJV has breached its agreements with EMB in that it failed and refused to pay EMB in full for labor, services and materials furnished in the prosecution of the work provided for in the parties' agreements.

17. EMB has suffered damages as a direct and proximate result of GOJV's breach of contract.

SECOND CLAIM

(QUANTUM MERUIT)

18. Plaintiff EMB repeats and realleges paragraphs 1 through 17 above as though fully set forth in this claim.

19. EMB provided valuable labor, services, and materials that were necessary for GOJV to perform and complete its obligations under the Prime Contract.

20. GOJV benefited from EMB's labor, services and materials, including but not limited to, the fact that GOJV could not have fully performed and completed its obligations under the Prime Contract in the absence of the labor, services and materials that EMB provided.

21. GOJV failed and refused to pay EMB for the labor, services and materials as referenced herein.

22. The Subcontract grants to EMB the right to recover money damages for quantum meruit against GOJV at Section 28.0 (Legal Remedies) at page 14. *See* Exhibit "A" at p. 14.

23. EMB has suffered damages and GOJV has or will be unjustly enriched as a result of GOJV's failure to pay.

THIRD CLAIM

(COMPEL ARBITRATION)

24. Plaintiff EMB repeats and realleges paragraphs 1 through 23 above as though fully set forth in this claim.

25. The parties have agreed to binding arbitration for disputes arising from claims made by EMB pursuant to § 23.1 at page 12 of the Subcontract.

26. Pursuant to the Federal Arbitration Act 9 U.S.C. §1 *et seq.*, EMB requests an Order to Compel the Arbitration between EMB and GOJV.

REQUEST FOR RELIEF

WHEREFORE, Plaintiff EMB requests for the following relief:

1. An Order to Compel Arbitration;
2. Damages in an amount to be proven at Arbitration or Trial;
3. Pre-judgment and post award interest pursuant to law;
4. Costs of suit incurred herein;
5. Reasonable attorney's fees; and
6. Such other and further relief as the Court may deem just and proper.

Respectfully submitted this 8 day of March, 2024.

**BERMAN LAW FIRM**
Attorneys for Plaintiff:
*E.M.B. ELECTRICAL INC.*

By: [signature]
**DANIEL J. BERMAN**

# Exhibit "A"



Granite – Obayashi, a Joint Venture

Subcontract No. 08.0005

# SUBCONTRACT

THIS SUBCONTRACT (hereafter "Subcontract"). is made and entered into this **October 11, 2017** by and between GRANITE-OBAYASHI a Joint Venture (hereafter "Contractor") and

**E.M.B. Electrical Inc.**
**894 B Marine Corps Drive**
**Upper Tumon , Guam 96913**
**Phone: 671-632-9620**

( hereafter "Subcontractor").

The Contractor has entered into a contract with **Naval Facilities and Engineering Command (NAVFAC) Pacific** (hereafter "Client") for the performance of certain work more particularly described in such contract (hereafter "Contract") for work on the project (described below). The Contract includes but is not limited to. documents incorporated by reference or otherwise attached to the Contract. which may include the general. supplementary, special and other terms and conditions and the addenda. plans. drawings. maps and other documents. The Contract is expressly incorporated herein as a part of the Subcontract Documents (as defined in Article 1.1). The project (hereafter "Project") is generally described as follows: **J-001B Finegayan Utilities and Site Improvements Phase I** under contract number **N62742-17-C-1324.**

Contractor and Subcontractor desire to enter into this Subcontract whereby Subcontractor shall undertake the performance of a part of the work to be performed by Contractor under the Contract.

**NOW, THEREFORE,** in consideration of the mutual promises and conditions herein contained. Contractor and Subcontractor agree as follows:

**1.0 SUBCONTRACT DOCUMENTS:** **1.1** The Subcontract Documents shall consist of this Subcontract, all attachments to this Subcontract. all documents referenced or identified in the Subcontract and attachments to this Subcontract. and the Contract. The Subcontract Documents not physically attached to the Subcontract will. upon the written request of Subcontractor. be provided to Subcontractor or Contractor shall make such documents available for Subcontractor's review in Contractor's office during normal business hours.

**1.2** Subcontractor shall be bound and obligated to Contractor by the terms and conditions of the Subcontract and the Subcontract Documents. Subcontractor assumes toward Contractor all obligations. liabilities and responsibilities that Contractor. by the Contract, has assumed toward Client as it applies to Subcontractor and/or the work of Subcontractor. Contractor shall further have the benefit of all rights. remedies. redress and limitations in respect to Subcontractor and all things done and used by Subcontractor in performance of its Work (as defined in Article 2.0) which Client and its agents have against Contractor under the Contract or by Law (as defined in Article 9.0). Any and all decisions or interpretations by Client or its agents relative to interpretation of the Contract or any ambiguity or discrepancy therein as it applies to the Work shall be binding on the Subcontractor to the same extent such decisions or interpretations are binding on Contractor.

**1.3** The intent of the Subcontract Documents is to include all items necessary for the proper execution and completion of the Work (as defined in Article 2.0). The Subcontract Documents are complementary. and what is required by any one shall be as binding as if required by all with respect to the Work. Work not explicitly covered in the Subcontract Documents shall be performed by Subcontractor so long as it is consistent with and is reasonably inferable from the Subcontract Documents and shall be considered included in the Subcontract Price (as defined in Article 3.0). The Contract and this Subcontract shall be interpreted together and in harmony with one another. In the event of conflict between the Contract and the Subcontract. the Contract shall be controlling except with respect to the independent relationship between Contractor and Subcontractor. which shall be governed by the Subcontract.

**1.4** Subcontractor hereby represents and acknowledges that it has reviewed and inspected all of the Subcontract Documents and has compared all such documents directly or indirectly relating to the performance of this Subcontract. Any and all errors, ambiguities and inconsistencies therein have been reported to the Contractor in writing and resolved to Subcontractor's satisfaction.

**2.0 WORK TO BE PERFORMED:** **2.1** Subcontractor. for the Subcontract Price (as defined in Article 3.0). shall furnish all supervision and labor. and furnish. supply and install all equipment. materials. and supplies and do all things necessary to fully. timely and properly perform and complete that portion of the work provided for in the Contract as identified in Attachment A.1 (hereafter "Work").

**2.2** Subcontractor warrants to Contractor and Client that all Work shall be performed in a neat. skillful. good and workmanlike manner and shall be fit for its intended use both as to workmanship and materials. All materials and equipment furnished by Subcontractor for

For GOJV Use Only
Initial ______

EXHIBIT
A


incorporation into the Project shall be new and of the best description and quality of their respective kinds, unless otherwise specified and ordered by Contractor in writing. Subcontractor warrants that the materials and equipment furnished and the Work performed will strictly comply with the Contract and this Subcontract and all applicable Laws (as defined in Article 9.0). Subcontractor acknowledges that Subcontractor's performance of the Work is subject to the approval and acceptance of Client to the extent required by the Contract and shall be reasonably satisfactory to Contractor.

**3.0 PAYMENT:** In consideration of the promises, covenants and agreements of Subcontractor herein contained, and the full, proper and timely performance of the Work and the whole thereof in the manner and according to the requirements of the Subcontract Documents and instructions of Contractor and the satisfaction of all other requirements of Subcontractor contained in the Subcontract Documents, Contractor shall pay to Subcontractor and Subcontractor agrees to receive and accept as full compensation therefore, payment made on the basis of (i) lump sum; (ii) unit price(s); (iii) time and materials; and/or (iv) cost plus an established mark-up for overhead and profit (or any combination of payment terms i-iv) as set forth in Attachment A.1 (hereafter "Subcontract Price"). The Subcontract Price shall be subject to additions and deductions for changes in the Work as provided for in Article 14.0 and other adjustments as provided for in this Subcontract.

**4.0 PAYMENT OF CHARGES AND TAXES:** The Subcontract Price includes, and Subcontractor shall promptly pay or cause to be paid, all costs, expenses, and other obligations incurred by, through or under Subcontractor related to the Project or the Work, including the cost of its sub-subcontractors of any tier or the suppliers to any of them and all taxes, including sales or use taxes, gross receipts taxes, assessment fees and charges, unemployment insurance, old age benefits, pensions or annuities imposed or required by any Law (as defined in Article 9.0) or government or labor agreement to which Contractor is a party or is otherwise obligated, and all other costs, expenses and obligations levied, incurred or payable on or in respect to Subcontractor's acts or transactions or tools, equipment or materials used by it in performing such obligations.

**5.0 PROGRESS AND FINAL PAYMENTS:** 5.1 Subcontractor, upon the request of Contractor, shall, prior to Subcontractor's first application for payment, submit to Contractor a schedule of values allocated to the various portions of the Work. The schedule of values shall reflect an accurate apportionment of the cost to perform the respective portions of the Work and shall be subject to the approval of Contractor and shall be in such form and supported by such data as Contractor may reasonably require. Subject to §5.3, the schedule of values shall be used for the evaluation of Subcontractor's application for payment.

5.2 Subcontractor, upon the request of Contractor, and on or before such date as Contractor shall designate, shall submit to Contractor, in form and content acceptable to Contractor, an itemized application for payment. The application for payment shall be notarized if required by Contractor and supported by such data substantiating Subcontractor's right to payment as Contractor may reasonably require including (i) invoices of sub-subcontractors or suppliers, (ii) certified payroll reports, (iii) reports of test results, (iv) inspection reports, or (v) any other documents required by this Subcontract or the Contract. If Subcontractor fails to timely submit its application for payment in form and content satisfactory to Contractor, a progress payment may not be included in Contractor's application for payment to Client.

5.3 Provided Subcontractor has complied with the requirements of §5.2, unless otherwise provided by Law (as defined in Article 9.0) or by the Subcontract Documents, within seven (7) business days after the date Contractor receives a progress payment from Client covering the amount of Work performed by Subcontractor, Contractor will pay to Subcontractor the amount due Subcontractor as estimated by Client (or Contractor, if Client makes no separate estimate of such Work, and approved by Client) for the period covered by the application for payment, less such amounts as Contractor shall determine as being properly withheld as allowed under this Subcontract. Subcontractor shall make payment to each of its subcontractors and suppliers amounts due them in the same manner and within the same time period as set forth above. Contractor shall reduce each payment to Subcontractor by the lesser of (i) ten percent (10%) or (ii) the maximum amount of retention allowed by Law (as defined in Article 9.0). To the fullest extent allowed by Law, the amount of reduction retained and withheld by Contractor under this §5.3, shall be released to Subcontractor only upon satisfaction of the requirements set forth in §5.6. Any sums that Contractor may receive from Client by reason of depositing security with Client shall be excluded in computing the payments to Subcontractor. The estimates of Client as to the amount of compensable Work performed by Subcontractor (or Contractor if Client makes no separate estimate of such Work) shall be binding upon Subcontractor and shall conclusively establish the amount of compensable Work performed by Subcontractor.

5.4 As a condition precedent to receiving payments from Contractor for Work performed, Subcontractor (and, to the extent required by Contractor, each of Subcontractor's subcontractors of any tier, the suppliers to any of them, and any other person or entity who has performed (or claims to have performed) a portion of the Work or a trust fund to which a portion of a laborer's total compensation is to be paid pursuant to an applicable employment agreement or collective bargaining agreement (collectively "Interest Claimants" and individually "Interest Claimant")) shall execute and deliver to Contractor, with its application for payment, a full and complete release of all claims (including, without limitation, any claim of lien or stop notice) and causes of action Subcontractor and such Interest Claimants, or any of them, may have (or claim to have) against Contractor, Client or the Project itself, any construction lender providing financing for the Project, or payment bond through the date of the execution of said release, save and except those claims specifically listed on said release and described in a manner sufficient for Contractor to identify such claim or claims with certainty. The release shall conform to the requirements of any

For GOJV Use Only
Initial


applicable statute. All payments shall be deemed advances and are subject to adjustment at any time for errors, overpayment or Contractor's good faith determination that the remaining balance of payments may be insufficient to insure completion of the Subcontract Work in accordance with its terms or to pay lien, retention or bond claims.

**5.5** As a condition precedent to Contractor's obligation to make payments to Subcontractor for Work performed, Subcontractor shall have properly executed and delivered to Contractor this Subcontract and all documents and information to be furnished by Subcontractor as required by the Subcontract Documents including the certificate(s) of insurance and endorsements required under Article 10.0 and, if requested by Client or Contractor, the certification required under §9.2.

**5.6** Unless otherwise provided by Law (as defined in Article 9.0) or by the Subcontract Documents, upon complete and satisfactory performance of this Subcontract by Subcontractor and final approval and acceptance of the Work by Client, Contractor will make final payment to Subcontractor of the balance due under this Subcontract within the lesser of (i) seven (7) business days after receipt by Contractor of final payment from Client for such Work or (ii) such time as prescribed by Law or the Subcontract Documents provided, however, that Subcontractor, following the request of Contractor, has timely furnished to Contractor (1) an affidavit that all payrolls, taxes, bills for material and equipment and other indebtedness connected with the Work for which Client, Client's property or Contractor might in any way be responsible, have been paid or otherwise satisfied; (2) consent of surety, if any, to final payment; (3) other data establishing payment or satisfaction of all such obligations to the extent and in such form as may be required by Client and/or Contractor; (4) fully executed waivers and/or release of (i) liens, (ii) notices to withhold or (iii) other claims against the land, improvements, or funds involved in the Project from Subcontractor and from Interest Claimants in form satisfactory to Contractor or required by statute, as appropriate; and (5) all other documents required by Client or the Subcontract Documents as a condition to final payment. If any Interest Claimant or other person or entity refuses to furnish a release or waiver or any other document or data required by Client or Contractor or as otherwise required under this §5.6, the Subcontractor shall, upon the request of Contractor, furnish security of a nature and in a form and amount required by Contractor including a bond in an amount prescribed by statute (or if not prescribed by statute in an amount as reasonably determined by Contractor) and form reasonably satisfactory to Client and/or Contractor which security shall be sufficient to protect and hold harmless Client and Contractor against any such claim or lien filed or presented by an Interest Claimant. Should the existence of any unsatisfied or undischarged claim, obligation or lien arising in conjunction with the Work become known after final payment is received from Contractor, Subcontractor shall promptly pay on demand all actual amounts Contractor and/or Client pay in putting in place and maintaining a release bond conforming to statutory requirements if applicable, or in satisfying, discharging or defending any such claim, obligation or lien, including all costs and actual attorney's fees incurred in connection therewith. Notwithstanding the payment to Subcontractor of final payment in accordance with §5.6 (and the satisfaction of any conditions required as a pre-requisite to the payment by Contractor to Subcontractor of final payment under §5.6 or any other Subcontract Document), Subcontractor shall continue to be obligated to Contractor under this Subcontract, including Article 14, until such time as Contractor is relieved of any further obligations to Client under the Contract.

**5.7** Contractor, to the extent allowed by Law (as defined in Article 9.0), may withhold from Subcontractor payments otherwise due, in whole or in part, or may nullify, in whole or in part, any approval previously made by Client or Contractor on account of defective materials or defective Work not remedied; claims filed or reasonable evidence indicating probability of filing of claims (including a claim of lien or stop notice) by an Interest Claimant; failure of Subcontractor to timely make the required payments to its subcontractors or others for material, supplies or labor or government agencies owed taxes; a reasonable doubt that the Subcontract can be completed for the balance then unpaid; a reasonable belief that the Work will not be completed in accordance with the Work Progress Schedule (as defined in Article 8.0); incomplete or non-conforming application for payment (if required); Subcontractor's failure to carry out or perform the Work in accordance with the Subcontract Documents; or any other reason set forth in the Subcontract Documents pertaining to Client's withholding of payments to Contractor. If the foregoing causes are promptly removed or corrected to Contractor's satisfaction, the withheld payments shall be made. If such causes are not promptly removed or corrected, Contractor may rectify the same at Subcontractor's expense including reimbursement of Contractor's actual attorney fees and costs incurred and the cost of procuring a release bond necessary to remove the effect of a claim of lien or stop notice where a lien or stop notice has been filed. No certificates issued or payment made to Subcontractor shall be considered an acceptance of any Work, whether or not defective or improper. Should any claim against Contractor arise after final payment is made, all provisions of Article 11.0 shall apply and be binding on Contractor and Subcontractor.

**5.8** Subcontractor grants to Contractor the right of set off of sums due to Subcontractor under the provisions of this Subcontract against any obligation that may be due from Subcontractor or its affiliates to Contractor regardless of the source of said obligation. Subcontractor, upon the request of Contractor, shall furnish an affidavit showing the names and addresses of all government agencies owed taxes or persons or companies that will or have furnished labor, materials, equipment or services for the Work and the amount due or to become due to each such person or company. No portion of the Subcontract Price otherwise payable or to be paid to Subcontractor shall be considered actually earned by Subcontractor until all such persons or companies are fully paid by Subcontractor in accordance with applicable Subcontract terms and conditions.

**5.9** To the fullest extent permitted by Law (as defined in Article 9.0), Contractor's payment to Subcontractor shall be conditioned upon Contractor's receipt of payment from Client for Work performed by Subcontractor. If Client has not timely paid Contractor all or any portion

For GOJV Use Only
Initial




of amounts due Contractor for Work performed by Subcontractor, and Contractor has initiated efforts to obtain payment from Client (including, but not limited to, litigation, arbitration or other form of alternate dispute resolution), then Contractor's obligation to pay Subcontractor shall be deferred until the first to occur of (i) ten (10) business days following receipt of payment by Contractor from Client; or (ii) twenty (20) business days following the conclusion or failure of such effort. It is expressly agreed that such deferral is a reasonable period of time; provided, however, if, during such deferral period, the statute of limitations for filing an action to foreclose a lien is set to expire, then no more than twenty (20) business days prior to the expiration of such statute of limitations, Subcontractor may take the action required in order to preserve its lien rights; and provided further, in no event shall Subcontractor file any action to foreclose its lien rights prior to completion of the work of improvement.

**5.10** Subcontractor agrees and covenants that money received for the performance of this Subcontract shall be held in trust and used solely for the benefit of employees of Subcontractor and firms supplying labor, materials, supplies, tools, machines, equipment, plant or services for this Project in connection with this Subcontract and having the right to assert liens or other claims against the land, improvements or funds involved in this Project or against any bond or other security posted by Contractor or Client.

5.11 Subcontractor warrants that title to all Work (including materials and equipment) covered by an application for payment will pass to Client, free and clear of all liens, claims, security interests or encumbrances upon the first to occur of (i) incorporation into the Project or (ii) upon the receipt of payment therefore by Subcontractor and that no Work, materials or equipment covered by any application for payment will have been acquired by the Subcontractor, or by any other person performing the Work at the site or furnishing materials and equipment for the Project, subject to an agreement under which an interest or an encumbrance is retained by the seller or otherwise imposed by the Subcontractor or such other person.

**5.12** To the extent allowed by Law (as defined in Article 9.0), payments, including progress and retention payments, may, in the discretion of Contractor, be made in the form of checks payable jointly to an Interest Claimant. Subcontractor shall immediately pay all Interest Claimants all amounts they are due. If Subcontractor shall fail to timely pay when due an Interest Claimant for any taxes, materials, labor and services furnished in connection with the performance of the Work, Contractor may pay in its sole discretion (but without obligation to do so) the amount of such taxes, labor, services and/or materials directly to the entity or person providing the same or the governmental agency to whom taxes are due. The amount paid by Contractor shall be deducted from payments otherwise due, or to become due, Subcontractor. Such payments shall be deemed payments made by Contractor to Subcontractor and the Subcontractor shall have no recourse against Contractor for payments made by Contractor hereunder.

**5.13** Subcontractor shall not be entitled to any interest on retention or other amounts to be paid to Subcontractor under the terms of this Subcontract except where the payment of interest is required by statute and the right to such interest cannot be waived or where Contractor receives interest from Client on proceeds due Subcontractor for Work performed.

**6.0 WORK AND JOBSITE CONDITIONS; REVIEW OF EARLIER WORK: 6.1** Subcontractor warrants and represents that it has inspected and familiarized itself with the site of its Work and the conditions affecting the Work including those bearing on transportation, disposal, handling and storage of materials, availability of labor, utilities, roads and uncertainties of weather, river stages, tides or other physical conditions of the site and the type of equipment and facilities needed preliminary to and during the performance of the Work. Subcontractor has satisfied itself as to the surface and subsurface conditions of the site from inspection of the site, all exploratory work done by Client and/or Contractor, as well as from information presented in the Subcontract Documents. Any failure by Subcontractor to acquaint itself with such available information that results in Subcontractor reaching erroneous conclusions or misinterpretations shall preclude Subcontractor from being entitled to a change in Subcontract Price or time extension. Subject to Subcontractor's compliance with the requirements of Article 14.0 and the Subcontract Documents, Subcontractor shall be entitled to an equitable proportionate share of any compensation Contractor receives from Client for changed or differing site conditions which impact Subcontractor's performance of the Work but only to the extent received by Contractor.

**6.2** Before proceeding with its work under this Subcontract, Subcontractor will verify that all earlier work is ready to accept the Work. By proceeding with the Work, Subcontractor accepts all earlier work as satisfactory and will pay resulting expenses if the earlier work is not fully satisfactory, including the cost to remove and replace any such work.

**7.0 INDEPENDENT CONTRACTOR: 7.1** Subcontractor represents and warrants that it is an independent contractor and shall operate as an independent contractor and not as an agent of Contractor. Subcontractor shall not represent or hold itself out to be an agent of Contractor. This Subcontract does not create, nor does any course of conduct between Contractor and Subcontractor with respect to this Subcontract create, any contractual relationship between any parties other than as Contractor and Subcontractor. Subcontractor shall assume all of the rights, obligations and liabilities, applicable to it as an independent contractor hereunder. Any provisions in this Subcontract which may appear or purport to give Contractor the right to direct Subcontractor as to details of performing the Work or to exercise a measure of control over the Work shall be deemed to mean that Subcontractor shall follow the Subcontract Documents to achieve the results of the Work only.











7.2 Subcontractor represents and warrants that it (i) is fully experienced and properly qualified to perform the class of Work provided for herein. (ii) has the financial capability and shall finance its own operations required for the performance of the Work and (iii) is properly equipped and organized to perform the Work in a competent, timely and proper manner in accordance with the requirements of the Subcontract Documents. Subcontractor represents and warrants that its entry into this Subcontract has not been induced either wholly or in part by any promises, representations or statements by Contractor or its agents or representatives other than those representations set forth in this Subcontract and that this Subcontract fully integrates the intentions of Contractor and Subcontractor. Subcontractor represents and warrants that is not presently debarred, suspended, proposed for debarment, or declared ineligible for the award of contracts by any federal or other public agency.

**8.0 COMMENCEMENT AND PROGRESS OF WORK**: **8.1** Time is of the essence in the performance by Subcontractor of its obligation under this Subcontract. Subcontractor shall initiate the Work and shall thereafter proceed and complete performance of the Work promptly and diligently all in accordance with the Work Progress Schedule (as defined in §8.3). The Work shall be performed in such a manner and sequence as to assure the timely completion of other work dependent on the Work and to permit completion of the Work as required by the Work Progress Schedule (as defined in §8.3). The timely performance of the Work in accordance with the Work Progress Schedule (as defined in §8.3) is a material provision of the Subcontract.

**8.2** Except as otherwise directed by Contractor, Subcontractor shall, within five (5) business days after its execution of this Subcontract, or within such other time as may be specified by Contractor, prepare and submit to Contractor in writing for Contractor's review and approval a proposed schedule, showing in detail (i) the number of days required by Subcontractor to complete the Work; (ii) the order in which Subcontractor proposes to carry out all major activities (including the sequence and anticipated duration of such activities) anticipated by Subcontractor and (iii) the dates on which the activities representing the complete performance of the Work (including procurement of materials, plant and equipment) may be started and finished ("Proposed Schedule"). Where Contractor has made available to Subcontractor a schedule for the Project as approved by Client ("Client's Schedule"), Subcontractor shall schedule and sequence its Work such that it is integrated into and consistent with the Client's Schedule.

**8.3** Provided Contractor has timely received the Subcontractor's Proposed Schedule for performance of the Work (if required), Contractor shall prepare the work progress schedule incorporating Subcontractor's Proposed Schedule to the extent reasonably feasible and consistent with the Client's Schedule (as integrated "the Work Progress Schedule"). Should any aspect of the Work Progress Schedule be at variance with the Subcontractor's Proposed Schedule or desired sequencing or duration of its Work, Subcontractor shall notify Contractor in writing **of such variation within five (5) business days of its receipt of the Work Progress Schedule. Thereafter, the parties shall meet in a good faith effort to resolve any scheduling differences. However, Subcontractor** shall abide by a final determination made by Contractor, in Contractor's sole discretion, with respect to the scheduling of the Work including the sequencing and duration of the Work. In any event, Contractor reserves the right to require Subcontractor, upon five (5) business days advance written notice, to commence the Work. **Subcontractor's failure to submit its Proposed Schedule, if and when required, or to notify Contractor in writing of any variation or conflict between Subcontractor's Proposed Schedule and the Work Progress Schedule shall bar Subcontractor from claiming either extensions of the** time and/or activity completion dates specified in the Work Progress Schedule or an increase in the Subcontract Price attributable to delay or acceleration if the basis for requesting such extension of time or increase in Subcontract Price is Subcontractor's inability to comply with the Work Progress Schedule.

**8.4** Subcontractor further acknowledges that, as construction progresses, it may be necessary for Contractor to change the sequential order and duration of various activities, including those contemplated by the Subcontract to reflect unanticipated delays, occurrences and other factors which act to alter the Work Progress Schedule. Contractor may require Subcontractor to prosecute the Work in such sequence as Contractor may reasonably require in order to maintain the progress of others and of the Work Progress Schedule. Contractor may, from time to time, revise and update the Work Progress Schedule so as to reflect the actual progress of the Work and/or changes in the Work. Subcontractor shall coordinate its Work with that of Contractor and others as Contractor may reasonably require. Subcontractor in the reasonable opinion of Contractor, shall at all times furnish and have available such sufficient and satisfactory equipment, materials, supplies and labor to perform the Work to meet the Work Progress Schedule. In the event Subcontractor fails to perform the Work in accordance with the Work Progress Schedule or, in order to avoid falling behind the Work Progress Schedule, to the extent such failure is not the result of a delay for which Subcontractor is entitled to an extension of time in which to perform the Work under this Article 8.0, Subcontractor, at its own expense, shall promptly provide additional equipment and/or labor and work additional shifts or overtime so as to meet and maintain the Work Progress Schedule. Subcontractor shall be responsible for all expenses and damages incurred by Contractor resulting from the failure of the Subcontractor to meet the Work Progress Schedule.

**8.5** If Subcontractor shall be delayed in the performance of the Work by any act or neglect of Client, its agents (including consultants, architects, engineers or other design professionals) or by changes ordered by Client in or to the Work, or other events beyond the control of Subcontractor and, not due, in whole or in part, to the fault of Subcontractor, Subcontractor shall be entitled to an extension of time and/or compensation for additional costs incurred by Subcontractor as a result thereof, but only to the extent that an extension of time and/or compensation (including compensation for interferences, hindrances, inefficiencies or disruptions) is received by Contractor from Client for

For GOJV Use Only
Initial

GRANITE
Granite – Obayashi, a Joint Venture


delays and/or costs incurred by Subcontractor and only if Subcontractor shall have notified Contractor in writing of the existence of the delay within two (2) business days of the occurrence of the event giving rise to the claim of delay. Subcontractor shall have the burden of proving the impact of the delay and justifying the time extension and/or compensation requested. If the performance of the Work by Subcontractor is unaffected by a delay incurred by Contractor (or another subcontractor) and for which relief is granted to Contractor (or such other subcontractor), Subcontractor shall not be entitled to claim an extension of time for such delay as a justification for delay in the timely performance of its Work.

**9.0 LAWS AND REGULATIONS: 9.1** Subcontractor, its employees and representatives shall at all times comply with all applicable laws, ordinances, statutes, rules and regulations, federal, state, county and municipal, and rulings or directives of any agencies having jurisdiction including those relating to the environment, wages (including, if required, the payment of prevailing wages and/or the timely submission of certified payrolls), hours, safety, equal employment opportunity and working conditions or which pertain in any way to the scope of work to be performed by Subcontractor (herein "Laws" or "Law"). Subcontractor represents and warrants that it holds all licenses required by Law and necessary for Subcontractor to perform the Work. Subcontractor shall procure and pay for all licenses, inspections and permits required by any governmental authority or any Law for any part of the Work. For the purposes of this Article 9.0, the territory of Guam shall be deemed a "state."

**9.2** If Subcontractor claims status as a disadvantaged business enterprise, including, without limitation, a minority business enterprise, veteran or service disabled veteran business enterprise, women's business enterprise, disabled persons business enterprise, HUB Zone small business, or any other specialized status or protected class recognized by applicable Law (herein "Specialized Status), then Subcontractor shall, at the request of Contractor (or Client) make all records available (including those of any lower tier subcontractor or supplier) in support of Subcontractor's claim (or that of a lower tier subcontractor or supplier) of Specialized Status within two (2) business days of such request to Contractor (or Client). Subcontractor shall provide to Contractor certification or other proof of Specialized Status (including confirmation of the Specialized Status claimed) (i) as of execution of this Subcontract; (ii) as of Subcontractor's application for final payment; (iii) within two (2) business days of a separate request made by Contractor therefore; and (iv) at such other times as Contractor may require. The certification or such other proof of status shall be in such form and content as required by Client and/or Contractor and shall include a statement certifying that Subcontractor is performing a commercially useful function as defined by applicable Law including 49 C.F.R. 26.55(c)(1). If the Specialized Status claimed by Subcontractor is denied or revoked by any agency or entity having authority to do so, then Subcontractor shall immediately provide written notice to Contractor of such loss of status together with the written determination of such agency or entity as communicated to Subcontractor.

**10.0 INSURANCE: 10.1** Upon execution of this Subcontract and, in any event, before commencing the Work, Subcontractor shall procure, and maintain in full force and effect at Subcontractor's expense, so long as may be necessary to fully protect Client and Contractor and, in any event, at least through the end of the warranty period, including any special warranties, applicable to the Work, Workers' Compensation Insurance in accordance with the Laws of Guam; and Employers' Liability Insurance; Commercial General Liability Insurance on an occurrence basis only with the general aggregate applying on a per project basis and including products, completed operations, contractual liability, broad form property damage, coverage for explosion, collapse, underground damages, and independent contractors; Comprehensive Automobile Liability Insurance on an "Any Auto" basis covering any and all owned, non-owned and hired automobiles used in connection with the Work and such other coverage and in the minimum limits as specified in **Attachment A.3.** If higher limits or other forms of insurance are required under the Contract, Subcontractor will comply with such requirements. The insurance required to be provided under this Article 10.0 shall be issued by companies with a rating by A. M. Best of A- or better and a financial size classification of VIII or better.

**10.1.1** If the Subcontractor's scope of work includes professional services, including design or engineering, the design professional shall procure and maintain Professional Errors and Omissions coverage written on a standard industry policy with minimum limits stated in Attachment A.3. The policy shall be subject to the approval of Contractor and, upon the request of Contractor, Subcontractor shall produce such policy for Contractor's review. Subcontractor shall provide Contractor with a certificate of insurance evidencing design professional's Professional Errors and Omissions coverage in accordance with the requirements of **Attachment A.3.**

**10.2** In addition to the insurance coverages identified and required in §10.1, if Subcontractor or any of its subcontractors of any tier are required to perform abatement, removal, remediation, transportation or disposal of hazardous, toxic or contaminated material including asbestos, heavy metals, etc., ("HTC Material") Subcontractor must procure and maintain Contractor's Pollution Liability insurance coverage or its equivalent. Such coverage shall carry limits of not less than the limits identified in Attachment A.3 and shall conform to the requirements of this Article 10 including the additional insured obligation stated in §10.3. If the Contractor's Pollution Liability coverage is written on a "claims made" policy, it shall have at least a three (3) year extended reporting period beyond completion of the Work. Coverage shall include an MCS-90 endorsement to Subcontractor's Comprehensive Automobile Liability policy or an endorsement to the Contractor's Pollution Liability to extend to transportation and hauling of HTC Material.

**10.3** The Commercial General Liability insurance policy (and the Contractor's Pollution Liability policy if the Work includes abatement, removal, remediation, transportation or disposal of HTC Material), Comprehensive Automobile Liability insurance policy and any and all

For GOJV Use Only
Initial

GRANITE
Granite – Obayashi, a Joint Venture


excess policies maintained by Subcontractor shall be endorsed (utilizing the form of endorsement identified in **Attachment A.3)** to stipulate that the insurance afforded the additional insureds (as identified in the next sentence), including completed operations, shall apply as primary insurance without qualification and that any insurance maintained by Client and Contractor shall be in excess only and shall not be called upon to contribute with the insurance of Subcontractor. Contractor, Client and their directors, officers, employees and agents and such other persons or entities as Contractor may require or is required of Contractor, under the Contract Documents, shall be named, by endorsement (using a form of endorsement approved by Contractor), as additional insureds on Subcontractor's general liability insurance policy and its automobile liability insurance policy, and, if Subcontractor's scope of Work includes the abatement, removal, remediation, transportation or disposal of any HTC Materials, its Contractor's pollution liability insurance in accordance with the requirements set forth in **Attachment A.3.**

**10.4** Before commencing the Work or within ten (10) business days after execution of this Subcontract whichever shall first occur, the Subcontractor shall furnish a certificate of insurance and endorsements (including the additional insured endorsement required under §10.3), satisfactory to Contractor, from each insurance company providing coverage to Subcontractor showing that said insurance coverage is in force, stating policy numbers, dates of expiration, deductible amounts applicable to each policy, and limits of liability thereunder, and further providing that the insurance will not be canceled, modified or changed until the expiration of at least thirty (30) calendar days after written notice of such cancellation, modification or change has been mailed by certified mail return receipt requested to Contractor. Subcontractor, upon the request of Contractor shall thereafter provide a current certificate of insurance and endorsements within ten (10) business days of the request of Contractor. Subcontractor shall be responsible for all deductible amounts applicable to each policy.

**10.5** Subcontractor's insurance shall apply separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the insurer's liability.

**10.6** Subcontractor for itself and on behalf of its insurers hereby waives and releases the additional insureds from liability for loss, damage or loss of property at the job site, which loss is covered by said insurance. Subcontractor shall obtain a waiver of any subrogation right that its insurers may acquire against any of the additional insureds by virtue of payment of any such loss covered by such insurance.

**10.7** If Subcontractor's existing coverage does not meet the requirements set forth herein, Subcontractor agrees to amend, supplement, or endorse the existing coverage to do so at no additional cost to Contractor. Compliance in full with the insurance requirements stated in this Article 10.0, are understood to be a condition precedent to Contractor's obligations under this Subcontract.

**10.8** The Subcontractor shall be responsible for determining the adequacy of insurance coverage requested, or put in place by others, with respect to the Work to be completed under this agreement. The Subcontractor shall, at its own expense, purchase any additional insurance which is required by Law or which it considers necessary to protect itself against liability or damage, loss or expense arising from damage to property or injury or death of any persons arising in any way out of, in conjunction with, or resulting from performance of the Work.

**10.9** It is understood and agreed that authorization is hereby granted to the Contractor to withhold payments to the Subcontractor until a current and properly executed Certificate of Insurance and approved endorsements providing insurance as required herein is received by the Contractor.

**11.0 LIABILITY FOR INJURY AND DAMAGES: 11.1** To the fullest extent permitted by Law, Subcontractor shall indemnify, defend (with counsel reasonably satisfactory to Contractor), and hold harmless Client and Contractor, as well as any individual and/or entity that Contractor is required by contract, including the Subcontract Documents, to indemnify, defend and/or hold harmless, and their officers, directors, joint venturers, agents, servants and employees, and each of them, (hereafter collectively "Indemnified Parties" and individually an "Indemnified Party"), from and against, any and all, suits, actions, legal or administrative proceedings, claims, debts, demands, damages, consequential damages, liabilities, interest, actual attorney's fees, costs and expenses of whatever kind or nature (hereafter "Claim" or "Claims") and whether they may arise during or after performance of the Work which are in any manner directly or indirectly caused, occasioned or contributed to, in whole or in part, or claimed to be caused, occasioned, or contributed to, in whole or in part, through any act, omission, fault or negligence whether active or passive of Subcontractor, or anyone acting under its direction, control, or on its behalf or for which it is legally responsible, in connection with or incident to the Work or arising out of any failure of Subcontractor to perform any of the terms and conditions of this Subcontract; without limiting the generality of the foregoing, the same shall include injury or death to any person or persons (including Subcontractor's employees) and damage to any property, regardless of where located, including the property of Client and Contractor. Subcontractor, however, shall be relieved of and shall have no further obligation to indemnify an Indemnified Party under any construction contract upon final resolution of a Claim (i.e. a Claim from which there is no longer any right of appeal) to the extent such Claim is determined to be due to (i) the active negligence, sole negligence or willful misconduct of an Indemnified Party or such Indemnified Party's agents or employees, (ii) defects in design furnished by an Indemnified Party or (iii) to the extent the Claim does not arise out of, pertain to or relate to the Work.

11.2 To the fullest extent permitted by Law, Subcontractor shall indemnify and defend and hold harmless the Indemnified Parties, and each of them, from and against all claims, royalties, damages, liabilities, costs and expenses of whatever kind or nature (including actual attorney's

For GOJV Use Only
Initial ______





GRANITE
OBAYASHI
Granite - Obayashi, a Joint Venture

fees) in any manner resulting, or claimed to result from any alleged infringement of any letters patent or patent rights by reason of the Work or materials or processes used by Subcontractor, its lower tier subcontractors and/or suppliers or others acting on its behalf, in the performance of the Work.

**11.3** The indemnification obligations of Subcontractor under this Subcontract including Articles 11.0, 12.0 and 25.0 and §5.6 shall survive termination of this Subcontract and shall extend to claims occurring after termination of this Subcontract as well as while it is in force.

**11.4** The obligations for indemnification herein required are severable. In addition to the provisions of Article 26.0, the unenforceability of any portion of the obligation for indemnification hereunder due to the effect of any Law, court decision, or any other reason, shall not nullify, reduce or limit other obligations set forth herein and such remaining obligations shall be valid and enforceable to the fullest extent permitted by Law. All other obligations arising under this Article 11.0 shall remain in full force and effect.

**11.5** The insurance obligations of the Subcontractor are separate, independent obligations under the Subcontract Documents, and the obligations for defense and indemnity contained in Articles 11.0, 12.0, and 25.0 and §5.6 are not intended to modify, nor should they be construed as modifying, or in any way limiting, the insurance obligations set forth in the Subcontract Documents.

**11.6** Contractor shall be entitled to recover actual attorney fees and court costs and all other costs, expenses and liabilities incurred by Contractor in an action brought to enforce all or any part of this Article 11.0.

**11.7** In the event any dispute arises over Subcontractor's duty to defend or indemnify an Indemnified Party (including, without limitation, any dispute relating to the responsibility of the parties with respect to the defense obligation or the scope of Subcontractor's duty to defend or indemnify as required herein, or Subcontractor's performance or non-performance under this Article 11.0 including the reallocation of defense costs), Contractor and Subcontractor agree, in addition to the rights and responsibilities of the parties under Article 23.0, to submit such dispute to binding arbitration before the American Arbitration Association, under the Construction Industry Arbitration Rules and Mediation Procedures, Fast Track Procedures.

**11.10** Subcontractor shall ensure that its sub-subcontractors also fully indemnify, defend and hold harmless the Indemnified Parties to the same extent that Contractor is required to indemnify, defend and hold harmless such Indemnified Parties.

**12.0 DELAY DAMAGES:** In the event any acts or omissions by or of Subcontractor delay Contractor in the performance of the Work or any others performing work for the Project or on the site of the Project resulting in Contractor being subjected to any damage or liability whether under the Contract or through any third party action or proceeding, Subcontractor agrees to indemnify, defend and hold Contractor harmless against any damage or liability for and to promptly pay to Contractor any damage or liability so incurred (including liquidated or actual damages) and such other or additional damages, costs, assessments and expenses including actual attorneys' fees, as Contractor may sustain by reason of Subcontractor's delay or failure to perform.

**13.0 ASSIGNMENT:** **13.1** Subcontractor shall not assign, sublet, subcontract or hypothecate this Subcontract or any of the Work or any amount due or payable hereunder without the prior written consent of Contractor. Any assignment, subletting, subcontracting or hypothecating of this Subcontract without such consent shall be void.

**13.2** Contractor has the right to assign this Subcontract to Client (or if Client is not the owner of the Project, to the entity designated by Client) consistent with the terms and conditions of the Contract. Subcontractor hereby agrees to accept such an assignment under the terms and conditions set forth in the Contract.

**14.0 CHANGES AND EXTRA WORK:** **14.1** Without invalidating this Subcontract and without notice to any surety, Contractor may, at any time or from time to time, order additions, deletions or revisions in the Work to be performed and/or the Work Progress Schedule ("Change" or "Changes"). Such changes may include any kind of addition, deletion, or modification of scope, for any purpose, and regardless whether added work changes the existing design or adds an entirely new element to the Work. Under no conditions shall Subcontractor make any changes to the Work, either as additions or deductions, without the written order of Contractor ("Change Order").

**14.2** All Changes ordered by Contractor but which originate with or are requested by Client will be compensated for by Contractor but only to the extent a commensurate adjustment in compensation or time is allowed Contractor by Client for labor, materials, equipment and Mark-up (as defined in §14.5) for Subcontractor performing the Change and any impact that Change has on the Work.

**14.3** All Changes directed by Contractor but which do not originate with or are not requested by Client will be compensated for by Contractor as mutually agreed in writing by Subcontractor and Contractor but in no event greater than Subcontractor's actual costs, plus Mark-up (as defined in §14.5) for performing the Change and any impact that Change has on the Work plus Mark-up (as defined in §14.5).

For GOJV Use Only
Initial

GRANITE OBAYASHI
Granite - Obayashi, a Joint Venture


Granite – Obayashi, a Joint Venture

14.4 In the event Subcontractor encounters any condition or event (other than a condition or event described in §8.5 or a condition or event caused solely by Contractor) during the performance of the Work that Subcontractor believes entitles it to an adjustment in the Subcontract Price and/or the Work Progress Schedule (a "Site Condition"), Subcontractor shall, before such Site Condition is disturbed, give written notice to Contractor of such Site Condition. The written notice shall be given to Contractor sufficiently in advance of the time Contractor is required to submit a claim, potential claim and notice of claim ("Potential Claim") to Client in accordance with the Contract so as to allow Contractor adequate time to understand and familiarize itself with the Site Condition, the impact that the Site Condition has or may have on Contractor and others, and the opportunity to prepare and timely submit to Client a Potential Claim on behalf of Subcontractor. The written notice shall have adequate information to enable Contractor to submit a Potential Claim on behalf of Subcontractor that is in strict accordance with the Contract. In no event, however, shall such written notice be given to Contractor more than two (2) business days after Subcontractor encounters the Site Condition. The timely delivery of an adequate written notice shall be an express condition precedent to the Subcontractor's right to an adjustment in the Subcontract Price and/or Work Progress Schedule because of such Site Condition. If Subcontractor fails to timely submit an adequate written notice in strict accordance with the requirements of this Subcontract, the Subcontractor waives any and all rights to any adjustment in the Subcontract Price and/or the Work Progress Schedule. In the event Contractor is allowed an adjustment in compensation and/or a time extension by Client as a result of a Site Condition for which Subcontractor provided a timely and adequate written notice, then Subcontractor shall be entitled to an adjustment in compensation to the extent a commensurate adjustment in compensation or time is allowed Contractor by Client for costs incurred by the Subcontractor that were caused by the Site Condition.

14.5 "Mark-up" is defined to be the overhead and profit that is specified in the Contract or any applicable Laws. However, if not so specified, Subcontractor's Mark-up shall be defined to be not more than 15% of the direct cost of the Change Order Work or an amount agreed to or established by Client or in the Subcontract Documents. Contractor shall be entitled to its own Mark-up from Client in addition to the Mark-up passed-through to Subcontractor for all Work performed under the Subcontract to the extent permitted by the Contract or by any applicable Laws or as agreed to by Client. Subcontractor agrees that payment of its Change Order fully compensates Subcontractor for all jobsite and home office overhead incurred by Subcontractor and its lower tier subcontractors and suppliers for the time period during which the work is performed under the Change Order.

14.6 Subject to the limitations stated in this Article 14.0, if pursuant to this Article 14.0 there is any Change or Subcontractor has encountered a Site Condition and has complied with all notice requirements in §14.4 and Contractor and Subcontractor are unable to agree on an adjustment to the Subcontract Price or method for adjusting the Subcontract Price (including unit price or force account rates) and/or adjustment in the Work Progress Schedule; or if a dispute arises between Contractor and Subcontractor as to (i) whether work performed by Subcontractor is included as part of its scope of Work; (ii) the validity of Contractor withholding any sums or exercising any of its rights under this Subcontract; or (iii) whether Subcontractor is entitled to additional time (including the amount of additional time) or compensation for the delays referred to in §8.5 or elsewhere in this Subcontract (collectively "Sub Claim"), then Subcontractor shall timely perform such work so as not to delay the Work Progress Schedule and the Sub Claim shall be resolved pursuant to Article 23.0.

14.7 Changes made under this Article 14.0 shall not be construed as interference with Subcontractor's performance of the Work regardless of the extent or number of such changes and whether the changes originate with the Contractor or Client including Client's or Contractor's exercise of the right to suspend all or any portion of the Work.

15.0 TERMINATION OR SUSPENSION OF WORK FOR CONVENIENCE: 15.1 If Client for any reason (including Client's convenience) terminates or suspends performance of the Work, or any portion of it under the Contract, Contractor may order Subcontractor to terminate or suspend its performance of the Work, or any portion of it and Contractor shall not be liable in any way for any such termination or suspension. Provided, however, to the extent that Contractor is compensated by Client by reason of such termination or suspension, then in such event Contractor shall pay to Subcontractor an equitable portion of said sum based upon the Work performed. In no event, absent Contractor's written determination to terminate this Subcontract, shall any change, directive or other communication from Client effect a termination or suspension of the Work or entitle Subcontractor or any of its sub-subcontractor's to any additional compensation, whether or not such change, directive or other communication from Client affects the means, methods, techniques or design of the Work or the Project.

15.2 In addition to Contractor's right to terminate or suspend the Work under §15.1, Contractor may, at any time terminate or suspend performance of the Work, or any portion thereof, at Contractor's convenience by service of written notice upon Subcontractor. Upon receipt of such notice, Subcontractor shall, unless the notice directs otherwise, immediately discontinue the Work, or designated portion thereof, and placing of orders for services, materials, facilities and supplies in connection with the performance thereof, and shall, unless otherwise directed, make every effort to procure cancellation of all existing orders or contracts related to such suspended or terminated Work upon terms approved by Contractor, or at the option of Contractor, give Contractor the right to assume the responsibilities and benefits of those obligations. Subcontractor shall thereafter do only such Work as may be necessary to preserve and protect the Work already in progress and to inventory and protect material and equipment on the job site, equipment in storage off of the job site (if previously allowed in writing on terms directed by Contractor) or in transit thereto.

For GOJV Use Only
Initial ______

GRANITE
Granite – Obayashi, a Joint Venture



**15.2.1** Upon such termination for Contractor's convenience, Subcontractor shall be entitled to payment in accordance with and subject to the requirements of Article 5.0, only as follows: (1) payment shall be made to Subcontractor commensurate with the percentage of Work properly completed through the date of termination (but in any event no more than one hundred fifteen percent (115%) of the direct cost of the Work completed); plus (2) such other actual and unavoidable out of pocket termination costs incurred by Subcontractor and approved in advance by Contractor.

**15.3** Termination costs to be paid to Subcontractor under this Article 15.0 shall be subject to Contractor's right to withhold as set forth in Article 5.0.

**16.0 DEFAULT BY SUBCONTRACTOR; TWO DAYS TO CURE:** **16.1** Immediately following the request of Contractor, Subcontractor shall provide Contractor with assurances of its ability to perform the Work and to meet its obligations in accordance with the requirements of this Subcontract or, in lieu thereof, statements of credit worthiness, either of which shall be subject to the reasonable satisfaction of Contractor.

**16.2** Contractor may terminate this Subcontract for default if Subcontract defaults under any obligation under this Subcontract and fails to cure said default within two (2) business days of receipt of notice of said default from Contractor. A default of Subcontractor's obligation(s) under this Subcontract shall include, without limitation, any of the following: (i) Subcontractor's failure to commence promptly or to prosecute the Work diligently in accordance with the Work Progress Schedule; (ii) Subcontractor's failure to provide Contractor with reasonably satisfactory evidence of its ability to perform (including evidence of its financial capability to perform) and/or statements of credit worthiness as required under §16.1; (iii) Subcontractor's insolvency, the filing by Subcontractor of a petition in bankruptcy, Subcontractor's making of an assignment for the benefit of creditors, or the filing of an involuntary petition for Subcontractor's bankruptcy by creditors; (iv) becoming involved in labor difficulties that do not constitute an excusable condition under §8.5; (v) Subcontractor's failure to maintain any policy of insurance or provide proof of such insurance as required under Article 10.0; (vi) Subcontractor's failure to pay taxes or payroll when due; (vii) Subcontractor's failure to timely pay or discharge in full or provide adequate security for the payment of all claims of any persons, or entities furnishing or claiming to have furnished labor, materials, equipment or incidentals used in, upon or for the Project, including any of Subcontractor's lower tier subcontractors or their suppliers, whether or not, as to any such claim, a lien or right of enforcement is established or attempted to be established upon or against the Project, the Work, the real property upon which the Work is situated, upon any bond furnished by Contractor or Client or upon any monies payable to Contractor by Client; and/or (viii) Subcontractor's material failure to perform any other obligation required of it under this Subcontract in a timely manner.

**16.3** In the event Subcontractor fails to cure any default under §16.2 within the time period stated in §16.2, Contractor, subject to Article 28, and in addition to its rights available to it under §16.2, shall have the right (but not the duty), if it so elects, to exercise any or all of the following remedies:

**16.3.1** Supply such number of workers and quantity of materials, equipment and other facilities as Contractor deems reasonably necessary for the completion of the Work or the orderly progress of the Work, or any part of the Work that Subcontractor has failed to complete or perform, and charge the cost thereof to Subcontractor, who shall be liable for the payment of same including reasonable overhead, profit and actual attorneys' fees incurred as a result of Subcontractor's default;

**16.3.2** Contract with one (1) or more additional contractors to perform such part of the Work as Contractor shall determine will provide the most expeditious completion of the total work required by the Contract and charge the cost thereof to Subcontractor;

**16.3.3** Withhold payment of any monies due Subcontractor pending corrective action to that required by and to the reasonable satisfaction of Contractor; and/or

**16.3.4** Terminate the right of Subcontractor to perform the Work and to use any materials, equipment, appliances or tools at the site of the Work furnished by or belonging to Subcontractor.

**16.4** In the event of an emergency affecting or threatening to affect the safety of persons or property, Contractor may proceed as provided in §16.3.1 through §16.3.4 without notice required under §16.2

**16.5** In the event Subcontractor files a petition in Bankruptcy under Chapter 7, 11 or 13, the Parties agree that any delay attendant to the assumption or rejection of this Subcontract by a trustee or a debtor-in-possession will be prejudicial to Contractor. Consequently, Subcontractor hereby stipulates, in order to minimize delay to the Project and to mitigate damages and/or other prejudice suffered by Contractor, to a notice period of ten (10) calendar days for Contractor's motion to require Subcontractor to elect to assume or reject this Subcontract.

For GOJV Use Only
Initial ____

GRANITE
Granite – Obayashi, a Joint Venture




16.6 Subcontractor hereby assigns, transfers, pledges and conveys to the Contractor (effective as of the date of this Subcontract, but only in the event of default, breach or failure by Subcontractor and subject to, and to the extent of, Contractor's acceptance of such assignment(s)), as collateral security, to secure the obligations under this Subcontract and any other indebtedness and liabilities of the Subcontractor to Contractor, all of Subcontractor's rights under this Subcontract, including Subcontractor's right, title and interest in and to (1) all subcontracts or supply contracts let by Subcontractor in connection therewith and such subcontractor's or supplier's surety bonds, (2) all machinery, plant, equipment, tools and materials which shall be on the site or sites of the work or elsewhere for the purposes of the Subcontract, including all materials ordered for this Subcontract, (3) any and all sums due or to become due on this Subcontract; and (4) any actions, causes of action, claims or demands whatsoever which the Subcontractor may have in any way arising out of or relating to this Subcontract.

**17.0 RESPONSIBILITY FOR WORK:** Subcontractor shall be responsible for and shall bear any loss of or damage to the Work and all materials, supplies and equipment under the care, custody and/or control or for which it is otherwise responsible until final approval and acceptance thereof by Client, except where such loss or damage results from the negligence of Contractor. Subcontractor shall be responsible to Contractor for any damage to the Work, other Project work or property of Client, Contractor or others caused by any act or omission of Subcontractor or anyone acting for or on its behalf.

**18.0 LABOR CONDITIONS:** Subcontractor shall not use any class of workers, materials, or methods which may cause strikes or labor disturbances and Subcontractor shall comply with all labor Laws applicable to the Work as are now or may hereafter be in force and effect. Subject to relief as allowed under the Contract (as provided in §8.5), Subcontractor shall be required to man its Work so as to maintain the Work Progress Schedule regardless of any labor activity including strikes, picketing or other labor disturbances. Subcontractor shall conform to prevailing wage and certified payroll requirements applicable to the Project, if any. Immediately upon the request of Contractor, Subcontractor shall remove from the Project any employee whom Contractor determines to be incompetent, undesirable or presents a threat of risk or harm to others. Subcontractor agrees that if any portion of the Work is further subcontracted, each such lower tier subcontractor shall be bound by and observe the provisions of this Article 18.0 to the same extent as herein required of Subcontractor, and that a copy of this Article 18.0 imposing such obligations upon such sub-subcontractor shall be included in any further sub-subcontract.

**19.0 INSPECTION; ACCESS; TWO DAYS TO CORRECT; POSSESSION PRIOR TO COMPLETION:** 19.1 The Work shall at all times be subject to inspection by Client and Contractor or their designated agents or representatives. Subcontractor shall at all times furnish to Contractor, its Client and their representatives safe and ample facilities for inspecting the Work (including materials) at the site of construction, shops, factories or any place of business of Subcontractor where the Work may be in the course of preparation, process, manufacture or treatment. Subcontractor, as often as required by Contractor, shall furnish to Contractor full reports of the progress of the Work at any place where the Work may be in the course of preparation or manufacture. Such reports shall show the progress of such preparation and manufacture in such details as may be required by Contractor, including any plans, drawings or diagrams in the course of preparation.

19.2 In the event that any part of the Work is determined by Client or Contractor to be improper, defective or otherwise fails to conform to the Subcontract Documents, either during the performance of the Work or during any guarantee period provided in the Contract or if there be none, then for a period of one (1) year from completion and acceptance of the Project by Client, Subcontractor shall, within two (2) business days of notification by Contractor to do so, immediately and diligently proceed to remove, dispose of and replace the same in a diligent manner and make good all work damaged or destroyed by or as a result of such defective, improper or nonconforming Work or materials or by the dismantling, removal or replacement of the defective, improper or non-conforming Work at Subcontractor's own cost and expense. If Subcontractor shall fail within such two (2) business day period to immediately proceed and continue thereafter to diligently replace or correct improper, defective or non-conforming Work promptly and completely, Contractor, at its option, may replace or correct the same and Contractor may declare Subcontractor in default of this Subcontract and shall have the right, if it so elects, to exercise any or all of the remedies in §16.3.1 through §16.3.4. Subcontractor shall be responsible for all costs, expenses (including actual attorney's fees), liabilities and consequential damages incurred by Contractor in connection with said replacements or corrections, whether removed, disposed of and replaced by Subcontractor or Contractor or others. Subcontractor shall execute and timely provide any special guarantees in the manner and to the extent required by the terms of the Subcontract Documents. Provided, however, the period of time given Subcontractor to repair and/or replace Work that is improper, defective or is otherwise non-conforming shall not be construed as granting to Subcontractor a time extension for the performance of all or any portion of the Work. Delays caused by Subcontractor's (i) failure to timely perform the Work in a proper manner or (ii) correction or replacement of improper, defective or otherwise non-conforming Work shall be the sole responsibility of Subcontractor.

19.3 Whenever it may be useful or necessary for Contractor or its Client to do so, Contractor or its Client shall be permitted to occupy and/or use any portion of the Work which has been either partially or fully completed by Subcontractor before final inspection and acceptance thereof by the Client, but such use and/or occupation shall not relieve Subcontractor of his guarantee of said Work nor of his obligation to make good at his own expense any defect in materials and/or workmanship which may occur or develop prior to Contractor's release from responsibility to the Client.

For GOJV Use Only
Initial

GRANITE
Granite – Obayashi, a Joint Venture



**20.0 CLEAN-UP**: Subcontractor shall carry on its operations so that the Project site shall at all times be clean, orderly and free from debris and waste. Upon completion of its Work, Subcontractor shall remove all equipment and unused materials from the site, clean up all refuse and debris, and leave the site of the Work clean, orderly and in good condition. If Subcontractor fails to keep the premises clean in accordance with the requirements of this Article 20.0, Contractor may clean, or cause the premises to be cleaned by others and shall be reimbursed by Subcontractor for all costs and expenses incurred in doing so plus a reasonable amount for overhead and profit.

**21.0 BOND**: Contractor may, at Contractor's sole discretion and expense, require that Subcontractor obtain and furnish surety bonds guaranteeing full performance of this Subcontract and that Subcontractor will promptly and fully pay for all work, labor and materials and other charges or costs in connection with the Work (collectively the "Bonds"). The form of the Bonds, the amount of the Bonds and surety underwriting the Bonds shall be acceptable to Contractor in its sole discretion.

**22.0 ENTIRE SUBCONTRACT**: **22.1** The Subcontract Documents comprise the entire and integrated agreement between Contractor and Subcontractor and supersede any and all prior negotiations, representations, understandings, and agreements, written or oral, relating to the Work or the relationship between the parties. No agent of either party has authority to make and the parties shall not be bound by or liable for any statement, representation, promise or agreement not set forth herein. No changes, amendments or modifications of the terms hereof shall be valid unless reduced to writing and signed by Contractor and Subcontractor.

**22.2** If, following execution of this Subcontract, the Parties enter into any subsequent agreement or understanding pertaining to or relating to the Project or Work to be performed on the Project, such agreement or understanding shall be governed by the terms and conditions of this Subcontract notwithstanding the existence of any pre-printed terms and conditions or oral agreement and the terms and conditions of this Subcontract shall govern in all cases.

**23.0 DISPUTE RESOLUTION**: **23.1** Any controversy, claim or dispute of whatever nature and on any theory, including negligence, misrepresentation, fraud or construction defect, that arises out of or relates to the Subcontract (including its interpretation or application), the Work, Sub Claims or any acts or omissions of Subcontractor, including the determination of the scope of this agreement to arbitrate, shall be decided by binding arbitration in accordance with the then current Construction Industry Rules of the American Arbitration Association, except for: disputes that have been waived by the making or acceptance of final payment or questions regarding the licensure of Subcontractor or litigation referred to in §23.2.

**23.1.1** Prior to demanding arbitration, the Subcontractor shall notify Contractor of its intent to demand arbitration and promptly upon such notification; the Contractor and Subcontractor shall meet to informally resolve such dispute. In the event that no resolution is achieved, and if, but only if, the parties mutually agree, then prior to the Subcontractor demanding arbitration, the parties shall make a good faith effort to resolve the dispute by negotiations between representatives with decision-making power, who, to the extent possible, shall not have had substantive involvement in the matters of the dispute.

**23.1.2** Notice of the demand for arbitration shall be filed in writing with the other party to this Subcontract in accordance with the then current Construction Industry Rules of the American Arbitration Association. For claims arising out of or related to Sub Claims or Claims For Extras (as defined in §23.4) the demand for arbitration may be made by either party and shall be made within a reasonable time but in no event later than thirty (30) calendar days after final acceptance of the Project by Client. All other demands for arbitration, including warranty claims and joinder or consolidation into other arbitration proceedings under §23.1.3 and §23.3, may be made by either party and shall be made within a reasonable time but in no event after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations. The award rendered by the arbitrator(s) shall be final and judgment may be entered upon it in accordance with applicable Law in any court having jurisdiction.

**23.1.3** Contractor may consolidate any arbitration between Contractor and Subcontractor or join Subcontractor into any arbitration or other dispute resolution proceeding provided for in the Contract ("Consolidated Arbitration") to the extent permitted by the Contract. Provided Subcontractor is afforded a reasonable opportunity to participate in the Consolidated Arbitration, Subcontractor shall be bound by the result of the Consolidated Arbitration to the same degree as the Contractor including the award rendered by the arbitrator(s) being final and judgment allowed to be entered upon it in accordance with applicable Law in any court having jurisdiction.

**23.2** In the event any person or entity including Client is engaged in litigation ("Litigation") against Contractor, or against Client who is pursuing a cross action against Contractor, on any theory of claim including negligence, fraud, strict liability or construction defects arguably caused in whole or in part by Subcontractor, then Contractor may join Subcontractor into such litigation.

**23.3** If Contractor agrees or is compelled to arbitrate said Litigation or participate or engage in another form of dispute resolution ("Third Party Arbitration"), then Contractor may consolidate any arbitration or other proceeding between Contractor and Subcontractor or join Subcontractor into any such Third Party Arbitration. Provided Subcontractor is afforded a reasonable opportunity to participate in the Third Party Arbitration, Subcontractor shall be bound by the result of the Third Party Arbitration, including any and all decisions, findings or

For GOJV Use Only
Initial




determinations made thereunder to the same degree as the Contractor is bound by such result including the arbitrator(s) award being final and judgment allowed to be entered upon it in accordance with applicable Law in any court having jurisdiction.

23.4 The dispute resolution procedure, if any, set forth in the Contract is specifically incorporated herein and made a part of this Subcontract to the extent it is applicable to claims for time or compensation that may originate with or may otherwise be the responsibility of Client. The Subcontractor agrees to make any Claims For Extras in the same manner as required in the Contract for like claims of the Contractor upon the Owner, and in such times as will enable the Contractor to timely present such claims to the Owner for payment or recognition. To the extent that a Sub Claim arguably originates with Client or other third parties or for which Client may be responsible, Contractor in its sole discretion, shall have the right to (i) prosecute such Sub Claim on behalf of Subcontractor or (ii) require Subcontractor to prepare, present and prosecute the Sub Claim to the extent it relates to such Sub Claim (collectively "Claims For Extras"). If Contractor elects to prosecute a Claim for Extras under §23.4(i), Subcontractor shall cooperate fully with the Contractor and to furnish all documents, statements, witnesses and other information required by Contractor for such purpose and to pay or reimburse Contractor for all expenses and costs, including reasonable attorneys' fees, incurred in connection therewith to the extent of the Subcontractor's interest in a claim or dispute. Where Contractor elects to have Subcontractor prosecute the Claim For Extras under §23.4(ii), Contractor's sole obligation shall be to present any approved and timely-filed Claims For Extras to Client in accordance with the procedure provided in the Contract. Contractor will not be liable to Subcontractor on account of any Sub Claims not timely or properly presented by Subcontractor and, subject to the other provisions of this Subcontract, shall be obligated to pay to Subcontractor only the proportionate share of any sums paid by the Client for the Work of Subcontractor or if an amount is not specifically delineated to be paid to Subcontractor, than an amount to which Subcontractor is reasonably entitled. Contractor's obligation under §23.4(i) or §23.4(ii) shall be subject to Subcontractor's compliance with all applicable Laws including those relating to false claims, dispute and claim certifications, cost and pricing data requirements and such other requirements as deemed necessary by Contractor to determine the validity of the Claim For Extras. To the extent required by Contractor, Subcontractor shall promptly provide to Contractor (i) all written documentation of cost and pricing data and any other information Subcontractor intends to rely upon in support of the Sub Claim; and (ii) written certification or other verification attesting to the validity and accuracy of the Sub Claim in form and content required by Contractor, Law and/or Client. The timely delivery to Contractor of the documentation and certification required is an express condition precedent to Contractor's obligation to handle, present, process and/or prosecute the Sub Claim.

23.5 It is further specifically agreed by the parties hereto that no claim, dispute or controversy shall interfere with the progress and performance of the Work and, unless otherwise agreed in writing, Subcontractor shall carry on the Work and maintain the Work Progress Schedule as directed by Contractor pending resolution of any dispute, including arbitration, and, if so, Contractor shall continue to make payment of undisputed amounts due to Subcontractor in accordance with this Subcontract.

23.6 This Article shall not be deemed a limitation of any rights or remedies which Contractor and/or Subcontractor may have under any federal or Guam mechanics' lien Laws or under any applicable labor and material payment bonds unless such rights or remedies are expressly waived by it. If required by statute to perfect or preserve lien, bond or stop notice rights, Subcontractor may commence litigation. However, such litigation shall be stayed or enjoined by stipulation or upon Contractor's motion pending a resolution or adjudication of any underlying issues in dispute that affect payment to Subcontractor.

23.7 This Article shall survive any actual or purported termination or rescission of this Subcontract.

23.8 If Contractor or Subcontractor brings a motion to dismiss or stay litigation pending arbitration or action or motion to compel arbitration, the prevailing party in such proceeding shall be entitled to recover reimbursement of actual attorney and expert fees and costs incurred to prosecute the motion.

**24.0 MISCELLANEOUS:** (i) As used in this Subcontract, the singular includes the plural; the masculine includes the feminine and neuter; (ii) If more than one person or entity is named herein as Subcontractor, their obligations shall be joint and several; (iii) All references to Subcontractor shall be construed to include its agents, employees, and its subcontractors of every tier and their vendors unless the context indicates otherwise; (iv) All references to sub-subcontractor shall include its subcontractors of every tier and their vendors unless the context indicates otherwise; (v) The parties and their respective assigns (to the extent such assigns are consented to as required in §13.2), legal representatives and other successors in interest will be bound hereby; (vi) The term "including" shall be construed to mean "including, but not limited to". For the purposes of this Subcontract, the Territory of Guam is deemed a "state."

**25.0 PRECAUTIONS: 25.1** Subcontractor shall be solely responsible for providing a safe place to work for Subcontractor's employees and for employees of its subcontractors and suppliers (hereafter "Employees"). Subcontractor shall take all necessary steps to protect Employees and others exposed to the operations of Subcontractor from risk of harm or injury including any conditions that present a risk of occupational injury or illness to Employees. Subcontractor shall not be relieved of such responsibility by any acts or omissions of Contractor. Subcontractor shall continuously inspect its Work, methodologies and materials (including the adequacy of and required use of all safety equipment) to discover and determine any conditions which pose a risk of bodily harm or injury to Employees or other persons on site or a risk of damage to property (including, the property of Client, Contractor and/or third parties) or a violation of any applicable Laws. With regard to industrial safety, Subcontractor's obligations are independent obligations and Subcontractor is vested with the authority and shall

For GOJV Use Only
Initial


take all precautions which are necessary and adequate to protect against and/or correct any such conditions immediately upon first becoming aware of the existence of such conditions whether by Subcontractor's discovery of such conditions or being made aware of the existence of such conditions by others.

**25.2** Subcontractor shall receive, respond to, defend and be responsible for and shall indemnify, defend and hold Client and Contractor harmless from, and against, any citation, order, claim, charge or action arising out of, resulting from or incidental to conditions that present a risk of occupational injury or illness to Employees regardless of whether such condition results from the acts or omissions of Subcontractor (or those for whom it is responsible) or are a contributing cause to the conditions giving rise to or resulting in the issuance or prosecution of a citation, order, claim, charge or action.

**25.3** Subcontractor's obligations under this Article 25.0 are in addition to and not in lieu of all other provisions of this Subcontract including its obligations to comply with Laws as provided in Article 9.0. Subcontractor shall adopt a written accident prevention program (hereafter "APP") that establishes minimum safety standards for Subcontractor's managers, supervisory personnel and employees. Where an APP is prescribed by Law, the APP shall comply with such Law. The APP shall (i) assign responsibilities for its managers, supervisory personnel and employees, (ii) establish standard procedures for hazard evaluation and employee and supervisor training for hazard recognition, (iii) provide for consistent, disciplined APP program enforcement, (iv) establish accident investigation procedures, (v) include record keeping to document Subcontractor's compliance with the requirements of the APP, and (vi) identify and list the minimum accident prevention requirements for typical operations. The foregoing shall be required as part of the APP regardless of whether required by Law. Nothing contained herein shall relieve Subcontractor of responsibility for safety and/or a safe place to work to the extent the same is required by the Contract. If required by Contractor, Subcontractor shall promptly provide Contractor with a copy of its APP.

**26.0 SEVERABILITY**: It is the Parties intent that this Subcontract not violate any Law. In the event that any provision of this Subcontract shall at any time contravene in whole or in part any applicable Law, then such provision shall remain in effect only to the extent permitted, and the remaining provisions hereof shall remain in full force and effect.

**27.0 EQUAL OPPORTUNITY**: Subcontractor will comply with all provisions of Executive Order No. 11246, of September 24, 1965, or as amended or superseded, and of the rules, regulations and relevant orders of the Secretary of Labor and other rules and regulations as provided by any Law. Subcontractor shall furnish all information and reports as may be required and will permit access to Subcontractor's books, records, and accounts by Contractor, governmental agencies and Secretary of Labor for the purpose of investigating compliance with such rules, regulations and relevant orders.

**28.0 LEGAL REMEDIES**: Either party hereto shall be entitled to all remedies afforded by Law or in equity to enforce their respective rights under this Subcontract. With the exception of the obligation of the Parties to proceed with arbitration as provided in Article 23, no right or remedy in the Subcontract, including those remedies provided for in Articles 16 and 19, are intended to be exclusive of any other right or remedy, but every such right or remedy shall be cumulative and shall be in addition to and not a limitation of any duties, obligations, rights and remedies otherwise imposed or available by Law, in equity or in the Subcontract.

**29.0 JURISDICTION**: It is understood and agreed that each and every provision of this Subcontract, including any alleged breach thereof, shall be interpreted in accordance with the Laws of Guam and the Laws of the United States of America applicable to Guam.

**30.0 TAX LEVIES**: Contractor may, in its absolute discretion, pay directly to taxing authorities any sums otherwise due Subcontractor and not subject to set-off under §5.7 hereof, upon receipt of a tax levy from such taxing authority.

**31.0 COMMUNICATIONS**: Subcontractor shall not communicate directly with Client or design professionals not under contract to Subcontractor. All communications to be addressed to Client or design professionals not under contract to Subcontractor shall be through Contractor only.

**32.0 NO WAIVER**: No waiver of any rights hereunder shall be valid or binding upon the parties unless the same be in writing and signed by authorized representatives of the parties. Failure of Contractor to insist upon strict performance of the Subcontract, or to exercise any option herein, shall not be construed to be a waiver of Contractor's right to insist on strict performance of any part of the Subcontract.

For GOJV Use Only
Initial


**33.0. WRITTEN NOTICE:** **33.1** Whenever, under the terms of this Subcontract, it becomes necessary, appropriate, or desirable for a party to give notice to the other party, said notice shall be in writing and shall be personally delivered or given or mailed by commercial overnight courier service or by registered or certified United States mail return receipt requested, with first-class postage prepaid, addressed as follows:

| | |
|---|---|
| To Contractor: | GRANITE-OBAYASHI a Joint Venture<br>674 Harmon Loop Road, Suite 315<br>Dededo, Guam 96929<br>Attn: Aaron Snyder |
| To Subcontractor: | E.M.B. Electrical Inc.<br>PO Box 23665<br>Barrigada, Guam 96921<br>Attn: Mila Alon |

**33.2** At any time, either party may designate a new or different address to which notices are to be sent, which notice of a new or different address shall be given as hereinabove immediately provided.

**33.3** Any notice shall be deemed given as of the time that the same is personally delivered to the intended recipient or as of a date two (2) days (excluding weekends and federal and state holidays) later than the time that the same is properly deposited in the United States mail, if such notice deposited in the United States mail is given as hereinabove provided, or as of a date one day (excluding weekends and federal and state holidays) later than the time that the same is properly given to a nationally recognized commercial overnight courier service, for delivery to the other Party.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Subcontract the day and year first above written.

| E.M.B. Electrical Inc.<br>**SUBCONTRACTOR** | **GRANITE-OBAYASHI a Joint Venture**<br>**CONTRACTOR** |
|---|---|
| **By:** [signature] | **By:** [signature] |
| **Title:** PRESIDENT | **Title:** PROJECT EXECUTIVE |
| **Name (Type)** MILA ALON ALON | **Name:** GLENN WALSH |

☒ Corporation ☐ Partnership

☐ Proprietorship ☐ Other ____________

Subcontractor's State License No. CLB09-0395

Date of Expiration JUNE 30, 2018

Federal I.D. No. 66-0721247

For GOJV Use Only
Initial [initials]


GRANITE
Granite – Obayashi, a Joint Venture

ATTACHMENT A.1

**WORK TO BE PERFORMED:**

| Item No. | Cost Code | Description | Quantity | U.M. | Unit Price | Total |
|---|---|---|---|---|---|---|
| 0001 | 85610005 | Site Communication Excluding Comm Paths A&C and Innerduct | 100 | PC | 28,607.2276 | $2,860,722.76 |
| 0002 | 85610010 | Site Electrical | 100 | PC | 82,334.2000 | $8,233,420.00 |
| 0003 | 85610001 | Street Lighting | 100 | PC | 27,735.9897 | $2,773,598.97 |
| 0004 | 85610010 | Temporary Office Electrical and Communication | 100 | PC | 424.3800 | $42,438.00 |
| 0005 | 85610010 | Building A - Substation | 100 | PC | 53,222.6641 | $5,322,266.41 |
| 0006. | 85610010 | Building B - Water Treatment | 100 | PC | 3,583.2785 | $358,327.85 |
| 0007 | 85610010 | Generator Bldg C1 & Pump Station 1 (F) | 100 | PC | 1,888.3266 | $188,832.66 |
| 0008 | 85610010 | Generator Bldg C2 & Pump Station 2 (G) | 100 | PC | 1,490.5797 | $149,057.97 |
| 0009 | 85610010 | Generator Bldg C3 & Pump Station 3 (J) | 100 | PC | 1,476.9254 | $147,692.54 |
| 0010 | 85610010 | Building D-Water Treatment & H6 | 100 | PC | 736.5923 | $73,659.23 |
| 0011 | 85610010 | Building H7 | 100 | PC | 594.3948 | $59,439.48 |
| 0012 | 85610010 | Building H11 | 100 | PC | 584.3948 | $58,439.48 |
| 0013 | 85610010 | Building H12 | 100 | PC | 584.3948 | $58,439.48 |
| 0014 | 85610010 | Utility Demolition | 100 | PC | 567.9000 | $56,790.00 |
| 0015 | 85610010 | Mobilization | 1 | LS | 35,000.0000 | $35,000.00 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | TOTAL | | | $ 20,418,124.83 |

For GOJV Use Only
Initial

GRANITE
Granite – Obayashi, a Joint Venture


GRANITE
Granite – Obayashi, a Joint Venture

**ATTACHMENT A.2**

**SCOPE OF WORK**

1. Subcontractor is responsible for:
   - A. Site Utility Demolition per Drawings CD151 through CD 163, ED101, ED102, ED601 and ED602
   - B. Site Communication per Drawings ET100 through ET602
   - C. Site Electrical per Drawings ES101 through ES603
   - D. Street Lighting per Drawings ES101 through ES603
   - E. Substation Building A Electrical per Drawing ES101A through ES103A, and E-101A through E-608A
   - F. Water Treatment Building B per Drawings ES101B, E-101B, E-102B, and E-601B
   - G. Generator Building BLDG C1 per Drawings ES101C1, E-101C1, and E-601C1
   - H. Generator Building BLDG C2 per Drawings ES101C2, E-101C2 and E-601C2
   - I. Generator Building BLDG C3 per Drawings ES101C3, E-101C3, and E-601C3
   - J. Well Water Treatment Building BLDG D and Well H6 per Drawings ED101D, ES101D, E-101D, and E-601D
   - K. Well 7 Renovations BLDG H7 per Drawings ED101H7, ES101H7, and E-601H7
   - L. Well 11 Renovations BLDG H11 per Drawings ED101H11, ES101H11, and E-601H11
   - M. Well 12 Renovations BLDG H12 per Drawings ED101H12, ES101H12, and E-601H12
   - N. Also included in Items 0001 through 0015 in Attachment A.1 are the following:
     - ~~i. Furnish and Install Communication Manholes~~
     - ii. Furnish and Install Sectionalized Terminal Cabinet
     - iii. Furnish and Install Pad Mounted Switchgear
     - iv. Furnish and Install Distribution Poles at the Main Road
     - v. Furnishing Street Light Poles
     - ~~vi. Ductbank Excavation and setting Ductbank Type 8 (1 EA 4")~~
     - vii. Electrical and Communication lines for Agency Accommodations
     - viii. Furnish and Install Street Lighting for added roads
     - ~~ix. Additional Ductbank for Building 35~~

2. Scope Exclusions:
   - A. Subcontractor is not responsible for Comm Path A&C per Drawings T-100 through T-602
   - B. Subcontractor is not responsible for Site Communication Innerduct per Drawings T-100 through T-602

3. Contractor will provide the following at no cost for Work under this Subcontract:
   - A. Contractor will provide Subcontractor with one (1) week notice prior to the start of Subcontractor's initial Work operations and other phased Work. Once a continuous or phased operation has begun, Subcontractor is expected to stay fully mobilized on the Project site, with qualified management and supervision including persons with authority to make all decisions necessary for the day-to-day operations of the Work.
   - ~~B.~~ Site Excavation required for Ductbanks ~~and Site Electrical Installation~~
   - C. Concrete and Sand for Encasement
   - D. Hauling and Disposal of Waste
   - E. Electrical Pad Construction
   - F. Furnish Laterals for Ductbank
   - G. Street Light Foundations and Handholds
   - H. SCADA per drawings E-602B, E-602C1, E-602C2, E-602C3, E-602D, E-602H7, E-602H11, and E-602H12
   - I. Furnish Coating for Manholes

4. All Work and payment under this Subcontract shall be in accordance to the Contract Drawings and Specifications, SOW, Special Provisions, and Amendments.

5. Subcontractor shall submit regular schedule updates, including, but not limited to, daily and weekly work plans and weekly Three-Week Look-a-head schedules.

6. SUBCONTRACT EXECUTION CONTINGENT – This Subcontract is not legally effective unless and until Subcontractor is approved by Client to perform the Work described, if such approval is required under the Contract.

For GOJV Use Only
Initial [signature]

[signature] GRANITE
Granite – Obayashi, a Joint Venture



7. DAILY REPORT - Subcontractor shall furnish a Daily Report to Contractor the first workday following the day the Work is performed. The Daily Report shall include, but not be limited to, the following items:
   A. Number of employees on the job
   B. Description and number of pieces of equipment on job
   C. Description and location of Work performed
   D. Quantities of Work performed
   E. Verbal instructions received from Contractor
   F. Requests made by Subcontractor
   G. Specific problems that need resolution
   H. Situations now delaying or slowing progress
   I. Miscellaneous remarks

8. BOND – Subcontractor shall furnish a satisfactory payment and performance bond on the form provided by Contractor in the full amount of Subcontract. Subcontractor shall cause the bond premium to be billed directly to Contractor by bonding agent. Contractor will deduct from payments due Subcontractor any bond premium invoiced in excess of 1.0%. In no event will Contractor pay more than actual invoice bond premium.

9. CERTIFIED PAYROLLS – Original and one copy of Weekly Certified Payrolls must be submitted to the Contractor within seven (7) days of the ending date of the payroll period. Project descriptions and contract numbers must be listed on all documents. Final payroll report must be marked "FINAL". Failure to submit accurate Certified Payrolls as specified may result in withholding of payment from Subcontractor. Provided, however, and notwithstanding the preceding sentence, in no event shall the amount withheld from Subcontractor be less than the amount, if any, withheld from Contractor by Owner as a result of the failure of Subcontractor to timely provide accurate and correct Certified Payrolls.

10. CERTIFIED PROGRESS PAYMENTS – Subcontractor shall fully comply with FAR clause 52.232-5 Payments Under Fixed-Price Construction Contracts for all payments. Progress payments shall include the Contractor Certification clause required by FAR clause 52.232-5 (below).

I hereby certify, to the best of my knowledge and belief, that --

(1) The amounts requested are only for performance in accordance with the specifications, terms, and conditions of the contract;

(2) All payments due to subcontractors and suppliers from previous payments received under the contract have been made, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with subcontract agreements and the requirements of chapter 39 of Title 31, United States Code;

(3) This request for progress payments does not include any amounts which the prime contractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract; and

(4) This certification is not to be construed as final acceptance of a subcontractor's performance.

MILA ALON ALON
(Name)

PRESIDENT
(Title)

10/20/2017
(Date)

11. PROMPT PAYMENT FOR SUBCONTRACTORS: All subcontractor payments shall be in accordance to FAR clause 52.232-27 *PROMPT PAYMENT FOR CONSTRUCTION CONTRACTS.*
   A. Contractor will pay the subcontractor for satisfactory performance under its subcontract no later than 7 days from receipt of payment out of such amounts as are paid to the Contractor under this contract.
   B. Contractor shall pay to the subcontractor an interest penalty for each payment not made in accordance with the payment clause
      i. For the period beginning on the day after the required payment date and ending on the date on which payment of the amount due is made; and

For GOJV Use Only
Initial



ii. Computed at the rate of interest established by the Secretary of the Treasury, and published in the Federal Register, for interest payments under 41 U.S.C. 7109 in effect at the time the Contractor accrues the obligation to pay an interest penalty.

iii. Subcontractor shall flow down the FAR Clause 52.232-27 to each lower-tier subcontractor including the payment and interest penalty clauses in subparagraphs (c)(1) and (c)(2): and

iv. Subcontractor shall require each of its subcontractors to include such clauses in their subcontracts with each lower-tier subcontractor or supplier.

12. **CONSTRUCTION WAGE DETERMINATION – All Subcontractors shall provide certified weekly payroll reports as mandated by the contract documents and FAR 52.222-8 Payrolls and Basic Records (MAY 2014) in compliance with the following:**
**GENERAL DECISION NUMBER: GU170002, Modification No. 0, Publication Date 07/07/2017**
**STATE/TERRITORY: Guam**
CONSTRUCTION TYPE: Heavy
COUNTIES: Guam Statewide
MODIFICATION NUMBER: 0
PUBLICATION DATE: 07/07/2017

13. FEDERAL ACQUISITION REGULATIONS (FAR) – This Subcontract Agreement is subject to all applicable FAR requirements specified in Attachment A.5 and referenced in the Construction Contract, Specifications, SOW, Special Provisions, and Amendments. Subcontractor has reviewed and is familiar with the FAR requirements that pertain to Federal projects. Subcontractor **acknowledges that all references to "Contractor" through the FAR requirements shall be interpreted as meaning this "Subcontractor" and all references to the "Subcontractor"** throughout the FAR requirements shall be interpreted as meaning lower tier subcontractors.

14. **Signed Statement and Acknowledgement Standard Form (SF) 1413 must be submitted within three (3) days from issuance date of this contract. The SF 1413 must identify all 2nd-Tier subcontractors. If there are 2nd-Tier subcontractors, those subcontractors must** additionally provide signed SF 1413s. If during the project, a subcontractor is added, a revised and signed SF1413 must be submitted.

15. Subcontractor fully comply with FAR 52.219-8 UTILIZATION OF SMALL BUSINESS CONCERNS (OCT 2014) and FAR 52.219-9 SMALL BUSINESS SUBCONTRACTING PLAN (OCT 2015)

A. **Subcontractor will adopt a subcontracting plan that complies with FAR** Clause 52.219-9 when subcontract **value** is in **excess of $700,000 ($1.5 million for construction of any public facility).**

B. **Subcontractors with subcontracting plans must submit the ISR and/or the** SSR using the eSRS as per Far Clause 52.219-9.

C. When submitting an ISR and/or SSR, subcontractor shall provide the prime contract number, its own DUNS number, and the email address of the subcontractor's official responsible for acknowledging receipt of or rejecting the ISRs



**ATTACHMENT A.3**

**INSURANCE LIABILITY LIMITS – APPLICABLE TO ALL SUBCONTRACTORS OF ANY TIER:**

1. Workers' Compensation & Employers' Liability

   Workers' Compensation Limits – Statutory as required by applicable State Law

   Employers' Liability Limits

   $1,000,000 Each Accident
   $1,000,000 Disease - Policy Limit
   $1,000,000 Disease - Each Employee
   If exposure exists, Subcontractor must show evidence of USL&H coverage and Maritime coverage with a minimum limit of $2,000,000 for Jones Act Coverage:

   The insurer shall agree to waive all rights of subrogation against Contractor, its officers and employees arising from work performed by Subcontractor for Contractor.

2. Commercial General Liability (Occurrence Form Only) Limits
   $1,000,000 Each Occurrence
   $1,000,000 Personal Injury Liability
   $1,000,000 Aggregate for Products-Completed Operations
   $2,000,000 General Aggregate

   Including products, completed operations, contractual liability, broad form property damage, independent contractors, and coverage for explosion, collapse, and underground damages. The General Aggregate shall apply on a per-project basis.

3. Automobile Liability Limits

   - $1,000,000 Combined Single Limit Each Occurrence Bodily Injury and Property Damage Including Owned, Non-owned, and Hired Vehicles.

4. ~~Professional Liability Limits — APPLICABLE TO ALL SUBCONTRACTORS OF ANY TIER PERFORMING ANY PROFESSIONAL SERVICES INCLUDING ENGINEERS, SURVEYORS, OR CONSULTANTS.~~

   ~~Professional Liability Limits~~

   ~~Limits for Professional Services of a non-critical nature (including access platforms, mix designs, haul roads, surveyors, water and air systems, etc.):~~

   ~~$1,000,000 Each Claim~~
   ~~$1,000,000 Aggregate~~

   ~~Limits for Professional Services of a critical nature (including design or engineering of permanent structures or temporary structures used in support of construction (including excavation) such as falsework or shoring and crane lifting):~~

   ~~$5,000,000 Each Claim~~
   ~~$5,000,000 Aggregate~~

5. ~~Contractor's Pollution Liability Limits APPLICABLE TO ALL SUBCONTRACTORS OF ANY TIER PERFORMING ANY REMOVAL, REMEDIATION, ABATEMENT, TRANSPORTATION OR DISPOSAL OF ANY HAZARDOUS MATERIALS.~~

   ~~$1,000,000 Each Occurrence~~
   ~~$1,000,000 Aggregate~~

   - ~~Claims Made polices shall include a three year extended reporting period beyond completion of the Work.~~

6. EQUIPMENT INSURANCE is the responsibility of and must be maintained by all Subcontractors of any tier for Subcontractor

For GOJV Use Only
Initial

GRANITE
Granite – Obayashi, a Joint Venture


owned, leased, rented and borrowed equipment.

The additional insured endorsement required under § 10.3 shall be written utilizing standard ISO form CG 20 10 04 13 in combination with **ISO form CG 20 37 04 13, or the equivalent, as determined by Contractor, and the endorsement required under § 10.3 for primary and non-contributory coverage shall be written utilizing standard ISO form CG 20 01 04 13. There shall be no modification or change from the** standard ISO form language.

The additional insured endorsement required under § 10.3 shall list the following as additional insured partied
GRANITE-OBAYASHI a Joint Venture
NAVFAC ROICC Finegayan

**Subcontractor shall fully comply with <u>FAR 52.228-5 Insurance – Work on a Government Installation (Jan 1997)</u>, stated below.**

(a) The Contractor shall, at its own expense, provide and maintain during the entire performance of this contract, at least the kinds and minimum amounts of insurance required in the Schedule or elsewhere in the contract.

(b) Before commencing work under this contract, the Contractor shall notify the Contracting Officer in writing that the required insurance has been obtained. The policies evidencing required insurance shall contain an endorsement to the effect that any cancellation or any material change adversely affecting the Government's interest shall not be effective –

(1) For such period as the laws of the State in which this contract is to be performed prescribe; or

(2) Until 30 days after the insurer or the Contractor gives written notice to the Contracting Officer, whichever period is longer.

(c) **The Contractor shall insert the substance of this clause, including this paragraph (c), in subcontracts under this contract that require work on a Government installation and shall require subcontractors to provide and maintain the insurance required in the Schedule or elsewhere in the contract. The Contractor shall maintain a copy of all subcontractors' proofs of required insurance, and shall make copies available to the** Contracting Officer upon request.

For GOJV Use Only
Initial

GRANITE
Granite – Obayashi, a Joint Venture



GRANITE
Granite – Obayashi, a Joint Venture

Page 22 of 32

**ATTACHMENT A.4**

PRELIMINARY INFORMATION:

**Project:** **J-001B Finegayan Utilities and Site Improvements Phase I**

GCCO Job No.: 733700

**Date:** **September 26, 2017**

**Client's (Owner) Name:** NAVFAC Pacific

**Subcontractor:** E.M.B. Electrical Inc.

For GOJV Use Only
Initial

22

GRANITE
Granite – Obayashi, a Joint Venture


ATTACHMENT A.5

FAR CLAUSES INCORPORATED BY REFERENCE

DOCUMENT 00700 CONTRACT CLAUSES TABLE OF CONTENTS

1.1 FAR 52.252-2, CLAUSES INCORPORATED BY REFERENCE (FEB 1998)
1.2 FAR 52.202-1, DEFINITIONS (NOV 2013)
1.3 FAR 52.203-3, GRATUITIES (APR 1984)
1.4 FAR 52.203-5, COVENANT AGAINST CONTINGENT FEES (MAY 2014)
1.5 FAR 52.203-6, RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT (SEP 2006)
1.6 FAR 52.203-7, ANTI-KICKBACK PROCEDURES (MAY 2014)
1.7 FAR 52.203-8, CANCELLATION, RESCISSION, AND RECOVERY OF FUNDS FOR ILLEGAL OR IMPROPER ACTIVITY (MAY 2014)
1.8 FAR 52.203-10, PRICE OR FEE ADJUSTMENT FOR ILLEGAL OR IMPROPER ACTIVITY (MAY 2014)
1.9 FAR 52.203-12, LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (OCT 2010)
1.10 FAR 52.203-13, CONTRACTOR CODE OF BUSINESS ETHICS AND CONDUCT (APR 2010)
1.11 FAR 52.203-16, PREVENTING PERSONAL CONFLICTS OF INTEREST (DEC 2011)
1.12 FAR 52.203-17, CONTRACTOR EMPLOYEE WHISTLEBLOWER RIGHTS AND REQUIREMENT TO INFORM EMPLOYEES OF WHISTLEBLOWER RIGHTS (APR 2014)
1.13 FAR 52.204-2, SECURITY REQUIREMENTS (AUG 1996) ALTERNATE II (APR 1984)
1.14 FAR 52.204-4, PRINTING OR COPIED DOUBLE-SIDED ON RECYCLED PAPER (MAY 2011)
1.15 FAR 52.204-9, PERSONAL IDENTITY VERIFICATION OF CONTRACTOR PERSONNEL (JAN 2011)
1.16 FAR 52.204-10, REPORTING EXECUTIVE COMPENSATION AND FIRST-TIER SUBCONTRACT AWARDS (JUL 2013)
1.17 FAR 52.204-13, SYSTEM FOR AWARD MANAGEMENT MAINTENANCE (JUL 2013)
1.18 FAR 52.204-14, SERVICE CONTRACT REPORTING REQUIREMENTS (JAN 2014)
1.19 FAR 52.204-18, COMMERCIAL AND GOVERNMENT ENTITY CODE MAINTENANCE (NOV 2014)
1.20 FAR 52.204-19, INCORPORATION BY REFERENCE OF REPRESENTATIONS AND CERTIFICATIONS (DEC 2014)
1.21 FAR 52.209-6, PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENDED, OR PROPOSED FOR DEBARMENT (AUG 2013)
1.22 FAR 52.209-9, UPDATES OF PUBLICLY AVAILABLE INFORMATION REGARDING RESPONSIBILITY MATTERS (JUL 2013)
1.23 FAR 52.209-10, PROHIBITION ON CONTRACTING WITH INVERTED DOMESTIC CORPORATIONS (DEC 2014)
1.24 FAR 52.211-10, COMMENCEMENT, PROSECUTION, AND COMPLETION OF WORK (APR 1984)
1.25 FAR 52.211-15, DEFENSE PRIORITY AND ALLOCATION REQUIREMENTS (APR 2008)
1.26 FAR 52.211-18, VARIATION IN ESTIMATED QUANTITIES (APR 1984)
1.27 FAR 52.215-2, AUDIT AND RECORDS--NEGOTIATION (OCT 2010)
1.28 FAR 52.215-10, PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA (AUG 2011)
1.29 FAR 52.215-11, PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA-- MODIFICATIONS (AUG 2011)
1.30 FAR 52.215-12, SUBCONTRACTOR COST OR PRICING DATA (OCT 2010)
1.31 FAR 52.215-13, SUBCONTRACTOR COST OR PRICING DATA--MODIFICATIONS (OCT 2010)
1.32 FAR 52.215-15 PENSION ADJUSTMENTS AND ASSET REVERSIONS (OCT 2010)
1.33 FAR 52.215-18, REVERSION OR ADJUSTMENT OF PLANS FOR POSTRETIREMENT BENEFITS (PRB) OTHER THAN PENSIONS (JUL 2005)
1.34 FAR 52.215-19, NOTIFICATION OF OWNERSHIP CHANGES (OCT 1997)
1.35 FAR 52.215-20, REQUIREMENTS FOR CERTIFIED COST OR PRICING DATA AND DATA OTHER THAN

For GOJV Use Only
Initial

GRANITE
Granite – Obayashi, a Joint Venture



CERTIFIED COST OR PRICING DATA (OCT 2010)

1.36 FAR 52.215-21, REQUIREMENTS FOR CERTIFIED COST OR PRICING DATA AND DATA OTHER THAN CERTIFIED COST OR PRICING DATA—MODIFICATIONS (OCT 2010)

1.37 FAR 52.219-8, UTILIZATION OF SMALL BUSINESS CONCERNS (OCT 2014)

1.38 FAR 52.219-9, SMALL BUSINESS SUBCONTRACTING PLAN (OCT 2014) ALTERNATE II (OCT 2001)

1.39 FAR 52.219-16, LIQUIDATED DAMAGES - SUBCONTRACTING PLAN (JAN 1999)

1.40 FAR 52.219-28, POST-AWARD SMALL BUSINESS PROGRAM REREPRESENTATION (JUL 2013)

1.41 FAR 52.222-1, NOTICE TO THE GOVERNMENT OF LABOR DISPUTES (FEB 1997)

1.42 FAR 52.222-3, CONVICT LABOR (JUN 2003)

1.43 FAR 52.222-4, CONTRACT WORK HOURS AND SAFETY STANDARDS ACT--OVERTIME COMPENSATION (MAY 2014)

1.44 FAR 52.222-6, CONSTRUCTION WAGE RATE REQUIREMENTS (MAY 2014)

1.45 FAR 52.222-7, WITHHOLDING OF FUNDS (MAY 2014)

1.46 FAR 52.222-8, PAYROLLS AND BASIC RECORDS (MAY 2014)

1.47 FAR 52.222-9, APPRENTICES AND TRAINEES (JUL 2005)

1.48 FAR 52.222-10, COMPLIANCE WITH COPELAND ACT REQUIREMENTS (FEB 1988)

1.49 FAR 52.222-11, SUBCONTRACTS (LABOR STANDARDS) (MAY 2014)

1.50 FAR 52.222-12, CONTRACT TERMINATION -- DEBARMENT (MAY 2014)

1.51 FAR 52.222-13, COMPLIANCE WITH CONSTRUCTION WAGE RATE REQUIREMENTS AND RELATED REGULATIONS (MAY 2014)

1.52 FAR 52.222-14, DISPUTES CONCERNING LABOR STANDARDS (FEB 1988)

1.53 FAR 52.222-15, CERTIFICATION OF ELIGIBILITY (MAY 2014)

1.54 FAR 52.222-21, PROHIBITION OF SEGREGATED FACILITIES (APR 2015)

1.55 FAR 52.222-26, EQUAL OPPORTUNITY (APR 2015)

1.56 FAR 52.222-27, AFFIRMATIVE ACTION COMPLIANCE REQUIREMENTS FOR CONSTRUCTION (APR 2015)

1.57 FAR 52.222-30, CONSTRUCTION WAGE RATE REQUIREMENTS --PRICE ADJUSTMENT (NONE OR SEPARATELY SPECIFIED METHOD) (MAY 2014)

1.58 FAR 52.222-35, EQUAL OPPORTUNITY FOR VETERANS (JUL 2014)

1.59 FAR 52.222-36, EQUAL OPPORTUNITY FOR WORKERS WITH DISABILITIES (JUL 2014)

1.60 FAR 52.222-37, EMPLOYMENT REPORTS ON VETERANS (JUL 2014)

1.61 FAR 52.222-40, NOTIFICATION OF EMPLOYEE RIGHTS UNDER THE NATIONAL LABOR RELATIONS ACT (DEC 2010)

1.62 FAR 52.222-50, COMBATING TRAFFICKING IN PERSONS (MAR 2015)

1.63 FAR 52.222-54, EMPLOYMENT ELIGIBILITY VERIFICATION (AUG 2013)

1.64 FAR 52.222-55, MINIMUM WAGES UNDER EXECUTIVE ORDER 13658 (DEC 2014)

1.65 FAR 52.222-99, ESTABLISHING A MINIMUM WAGE FOR CONTRACTORS (DEVIATION 2014- O0017) (JUN 2014)

1.66 FAR 52.223-2, AFFIRMATIVE PROCUREMENT OF BIOBASED PRODUCTS UNDER SERVICE AND CONSTRUCTION CONTRACTS (SEP 2013)

1.67 FAR 52.223-3, HAZARDOUS MATERIAL IDENTIFICATION AND MATERIAL SAFETY DATA (JAN 1997)

1.68 FAR 52.223-5, POLLUTION PREVENTION AND RIGHT-TO-KNOW INFORMATION (MAY 2011)

1.69 FAR 52.223-6, DRUG-FREE WORKPLACE (MAY 2001)

1.70 FAR 52.223-9, ESTIMATE OF PERCENTAGE OF RECOVERED MATERIAL CONTENT FOR EPA-DESIGNATED PRODUCTS (MAY 2008) ALTERNATE I (MAY 2008)

1.71 FAR 52.223-15, ENERGY EFFICIENCY IN ENERGY-CONSUMING PRODUCTS (DEC 2007)

1.72 FAR 52.223-17, AFFIRMATIVE PROCUREMENT OF EPA-DESIGNATED ITEMS IN SERVICE AND CONSTRUCTION CONTRACTS (MAY 2008)

1.73 FAR 52.223-18, ENCOURAGING CONTRACTOR POLICIES TO BAN TEXT MESSAGING WHILE DRIVING (AUG 2011)

1.74 FAR 52.224-1, PRIVACY ACT NOTIFICATION (APR 1984)

For GOJV Use Only
Initial

Granite – Obayashi, a Joint Venture


1.75 FAR 52.224-2, PRIVACY ACT (APR 1984)
1.76 FAR 52.225-11, BUY AMERICAN -- CONSTRUCTION MATERIALS UNDER TRADE AGREEMENTS (MAY 2014) ALTERNATE I (MAY 2014)
1.77 FAR 52.225-13, RESTRICTIONS ON CERTAIN FOREIGN PURCHASES (JUN 2008)
1.78 FAR 52.227-1, AUTHORIZATION AND CONSENT (DEC 2007) ALTERNATES I AND II (APR 1984)
1.79 FAR 52.227-2, NOTICES AND ASSISTANCE REGARDING PATENT & COPYRIGHT INFRINGEMENT (DEC 2007)
1.80 FAR 52.227-4, PATENT INDEMNITY -- CONSTRUCTION CONTRACTS (DEC 2007) ALTERNATE I (DEC 2007)
1.81 FAR 52.228-5, INSURANCE--WORK ON A GOVERNMENT INSTALLATION (JAN 1997)
1.82 FAR 52.229-3, FEDERAL, STATE, AND LOCAL TAXES (FEB 2013)
1.83 FAR 52.232-5, PAYMENTS UNDER FIXED - PRICE CONSTRUCTION CONTRACTS (MAY 2014)
1.93 FAR 52.232-17, INTEREST (MAY 2014)
1.94 FAR 52.232-23, ASSIGNMENT OF CLAIMS (MAY 2014) ALTERNATE I (APR 1984)
1.95 FAR 52.232-27, PROMPT PAYMENT FOR CONSTRUCTION CONTRACTS (MAY 2014)
1.96 FAR 52.232-33, PAYMENT BY ELECTRONIC FUNDS TRANSFER - SYSTEM FOR AWARD MANAGEMENT (JUL 2013)
1.97 FAR 52.232-39, UNENFORCEABILITY OF UNAUTHORIZED OBLIGATIONS (JUN 2013)
1.98 FAR 52.232-40, PROVIDING ACCELERATED PAYMENTS TO SMALL BUSINESS SUBCONTRACTORS (DEC 2013)
1.99 FAR 52.233-1, DISPUTES (MAY 2014) ALTERNATE I (DEC 1991)
1.100 FAR 52.233-4, APPLICABLE LAW FOR BREACH OF CONTRACT CLAIM (OCT 2004)
1.101 FAR 52.236-1, PERFORMANCE OF WORK BY THE CONTRACTOR (APR 1984)
1.102 FAR 52.236-2, DIFFERING SITE CONDITIONS (APR 1984)
1.103 FAR 52.236-3, SITE INVESTIGATION AND CONDITIONS AFFECTING THE WORK (APR 1984)
1.104 FAR 52.236-4, PHYSICAL DATA (APR 1984)
1.105 FAR 52.236-5, MATERIAL AND WORKMANSHIP (APR 1984)
1.106 FAR 52.236-7, PERMITS AND RESPONSIBILITIES (NOV 1991)
1.107 FAR 52.236-8, OTHER CONTRACTS (APR 1984)
1.108 FAR 52.236-9, PROTECTION OF EXISTING VEGETATION, STRUCTURES, EQUIPMENT, UTILITIES, AND IMPROVEMENTS (APR 1984)
1.109 FAR 52.236-10, OPERATIONS AND STORAGE AREAS (APR 1984)
1.110 FAR 52.236-11, USE AND POSSESSION PRIOR TO COMPLETION (APR 1984)
1.111 FAR 52.236-12, CLEANING UP (APR 1984)
1.112 FAR 52.236-13, ACCIDENT PREVENTION (NOV 1991) ALTERNATE I (NOV 1991)
1.113 FAR 52.236-14, AVAILABILITY AND USE OF UTILITY SERVICES (APR 1984)
1.114 FAR 52.236-15, SCHEDULES FOR CONSTRUCTION CONTRACTS (APR 1984)
1.115 FAR 52.236-16, QUANTITY SURVEYS (APR 1984)
1.116 FAR 52.236-17, LAYOUT OF WORK (APR 1984)
1.117 FAR 52.236-21, SPECIFICATIONS AND DRAWINGS FOR CONSTRUCTION (FEB 1997) ALTERNATES I AND II (APR 1984)
1.118 FAR 52.242-13, BANKRUPTCY (JUL 1995)
1.119 FAR 52.242-14, SUSPENSION OF WORK (APR 1984)
1.120 FAR 52.243-4, CHANGES (JUN 2007)
1.121 FAR 52.243-6, CHANGE ORDER ACCOUNTING (APR 1984)
1.122 FAR 52.244-6, SUBCONTRACTS FOR COMMERCIAL ITEMS (APR 2015)
1.123 FAR 52.245-1, PROPERTY RECORDS (APR 2012), ALT I (APR 2012)
1.124 FAR 52.245-9, USE AND CHARGES (APR 2012)
1.125 FAR 52.246-12, INSPECTION OF CONSTRUCTION (AUG 1996)
1.126 FAR 52.246-21, WARRANTY OF CONSTRUCTION (MAR 1994) ALTERNATE I (APR 1984)
1.127 FAR 52.248-3, VALUE ENGINEERING -- CONSTRUCTION (OCT 2010) ALTERNATE I (APR 1984)



1.128 FAR 52.249-2, TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED - PRICE) (APR 2012) ALTERNATE I (SEP 1996)
1.129 FAR 52.249-10, DEFAULT (FIXED - PRICE CONSTRUCTION) (APR 1984)
1.130 FAR 52.251-1, GOVERNMENT SUPPLY SOURCES (APR 2012)
1.131 FAR 52.253-1, COMPUTER GENERATED FORMS (JAN 1991)
1.132 DFARS 252.203-7000, REQUIREMENTS RELATING TO COMPENSATION OF FORMER DOD OFFICIALS (SEP 2011)
1.133 DFARS 252.203-7001, PROHIBITION ON PERSONS CONVICTED OF FRAUD OR OTHER DEFENSE-CONTRACT-RELATED FELONIES (DEC 2008)
1.134 DFARS 252.203-7002, REQUIREMENT TO INFORM EMPLOYEES OF WHISTLEBLOWER RIGHTS (SEP 2013)
1.135 DFARS 252.203-7003, AGENCY OFFICE OF THE INSPECTOR GENERAL (DEC 2012)
1.136 DFARS 252.203-7004, DISPLAY OF FRAUD HOTLINE POSTER(S) (JAN 2015)
1.137 DFARS 252.203-7999, PROHIBITION ON CONTRACTING WITH ENTITIES THAT REQUIRE CERTAIN INTERNAL CONFIDENTIALITY AGREEMENT (DEVIATION 2015-O0010)(FEB 2015)
1.138 DFARS 252.204-7000, DISCLOSURE OF INFORMATION (AUG 2013)
1.139 DFARS 252.204-7003, CONTROL OF GOVERNMENT PERSONNEL WORK PRODUCT (APR 1992)
1.140 DFARS 252.204-7005, ORAL ATTESTATION OF SECURITY RESPONSIBILITIES (NOV 2001)
1.141 DFARS 252.204-7012, SAFEGUARDING OF UNCLASSIFIED CONTROLLED TECHNICAL INFORMATION (NOV 2013)
1.142 DFARS 252.205-7000, PROVISIONS OF INFORMATION TO COOPERATIVE AGREEMENT HOLDERS (DEC 1991)
1.143 DFARS 252.209-7004, SUBCONTRACTING WITH FIRMS THAT ARE OWNED OR CONTROLLED BY THE GOVERNMENT OF A TERRORIST COUNTRY (DEC 2014)
1.144 DFARS 252.211-7003, ITEM UNIQUE IDENTIFICATION AND VALUATION (DEC 2013)
1.145 DFARS 252.211-7007, REPORTING OF GOVERNMENT-FURNISHED PROPERTY (AUG 2012)
1.146 DFARS 252.215-7000, PRICING ADJUSTMENTS (DEC 2012)
1.147 DFARS 252.222-7000, RESTRICTIONS ON EMPLOYMENT OF PERSONNEL (MAR 2000)
1.148 DFARS 252.222-7006, RESTRICTIONS ON THE USE OF MANDATORY ARBITRATION AGREEMENTS (DEC 2010)
1.149 DFARS 252.223-7001, HAZARD WARNING LABELS (DEC 1991)
1.150 DFARS 252.223-7004, DRUG-FREE WORK FORCE (SEP 1988)
1.151 DFARS 252.223-7006, PROHIBITION ON STORAGE AND DISPOSAL OF TOXIC AND HAZARDOUS MATERIALS (SEP 2014)
1.152 DFARS 252.223-7008, PROHIBITION OF HEXAVALENT CHROMIUM (JUN 2013)
1.153 DFARS 252.225-7005, IDENTIFICATION OF EXPEDITURES IN THE UNITED STATES (JUN 2005)
1.154 DFARS 252.225-7012, PREFERENCE FOR CERTAIN DOMESTIC COMMODITIES (FEB 2013)
1.155 DFARS 252.225-7041, CORRESPONDENCE IN ENGLISH (JUN 1997)
1.156 DFARS 252.225-7048, EXPORT-CONTROLLED ITEMS (JUN 2013)
1.157 DFARS 252.225-7993, PROHIBITION ON CONTRACTING WITH THE ENEMY (DEVIATION 2014-O0020)(SEP 2014)
1.158 DFARS 252.227-7022, GOVERNMENT RIGHTS (UNLIMITED) (MAR 1979)
1.159 DFARS 252.227-7023, DRAWINGS AND OTHER DATA TO BECOME THE PROPERTY OF GOVERNMENT (MAR 1979)
1.160 DFARS 252.227-7033, RIGHTS IN SHOP DRAWINGS (APR 1966)
1.161 DFARS 252.231-7000, SUPPLEMENTAL COST PRINCIPLES (DEC 1991)
1.162 DFARS 252.232-7003, ELECTRONIC SUBMISSION OF PAYMENT REQUESTS AND RECEIVING REPORTS (JUN 2012)
1.163 DFARS 252.232-7006, WIDE AREA WORKFLOW PAYMENT INSTRUCTIONS (MAY 2013)
1.164 DFARS 252.232-7010, LEVIES ON CONTRACT PAYMENTS (DEC 2006)
1.165 DFARS 252.236-7001, CONTRACT DRAWINGS AND SPECIFICATIONS (AUG 2000)

For GOJV Use Only
Initial

GRANITE
Granite – Obayashi, a Joint Venture


1.166 DFARS 252.236-7013, REQUIREMENT FOR COMPETITION OPPORTUNITY FOR AMERICAN STEEL PRODUCERS, FABRICATORS, AND MANUFACTURERS (JUN 2013)
1.167 DFARS 252.243-7001, PRICING OF CONTRACT MODIFICATIONS (DEC 1991)
1.168 DFARS 252.243-7002, REQUESTS FOR EQUITABLE ADJUSTMENT (DEC 2012)
1.169 DFARS 252.244-7000, SUBCONTRACTS FOR COMMERCIAL ITEMS (JUN 2013)
1.170 DFARS 252.245-7001, TAGGING, LABELING AND MARKING OF GOVERNMENT-FURNISHED PROPERTY (APR 2012)
1.171 DFARS 252.245-7002, REPORTING LOSS OF GOVERNMENT PROPERTY (APR 2012)
1.172 DFARS 252.245-7003, CONTRACTOR PROPERTY MANAGEMENT SYSTEM ADMINISTRATION (APR 2012)
1.173 DFARS 252.245-7004, REPORTING, REUTILIZATION, AND DISPOSAL (MAR 2015)
1.174 DFARS 252.246-7003: NOTIFICATION OF POTENTIAL SAFETY ISSUES (JUN 2013)
1.175 DFARS 252.246-7004, SAFETY OF FACILITIES, INFRASTRUCTURE, AND EQUIPMENT FOR MILITARY OPERATIONS (OCT 2010)
1.176 DFARS 252.247-7023, TRANSPORTATION OF SUPPLIES BY SEA (APR 2014)
1.177 DFARS 252.247-7024, NOTIFICATION OF TRANSPORTATION OF SUPPLIES BY SEA (MAR 2000)
1.178 NFAS 5252.201-9300, CONTRACTING OFFICER AUTHORITY (JUN 1994)
1.179 NFAS 5252.209-9300, ORGANIZATIONAL CONFLICTS OF INTEREST (JUN 1994)
1.180 NFAS 5252.228-9300, INDIVIDUAL SURETY/SURETIES (JUN 1994)
1.181 NFAS 5252.236-9303, ACCIDENT PREVENTION (NOV 1998)
1.182 NFAS 5252.236-9305, AVAILABILITY OF UTILITIES (JUN 1994)
1.183 NFAS 5252.236-9310, RECORD DRAWINGS (OCT 2004) ALTERNATE I (JUN 1994) ALTERNATE II (OCT 2004)
1.184 NFAS 5252.242-9300, GOVERNMENT REPRESENTATIVES (OCT 1996)
1.184 NFAS 5252.245-9302, LIMITED ASSUMPTION OF RISK BY GOVERNMENT (JUN 1994)

--End Document Table of Contents--

DOCUMENT 00700
CONTRACT CLAUSES 06/15

1.1 FAR 52.252-2, CLAUSES INCORPORATED BY REFERENCE (FEB 1998)

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at this address:

DOCUMENT 00800 LABOR

REQUIREMENTS

1.1 NOTICE CONCERNING LABOR RATES

The Construction Wage Requirements statute (formerly known as the Davis-Bacon Act) will apply. The attached Guam

For GOJV Use Only
Initial


General Wage Decision No. GU170002, Modification No. 0, Publication Date 07/07/2017 will remain in effect for the duration of the project.

Federal Acquisition Regulation (FAR) 22-404-6(c) requires incorporation of a wage determination received by the contracting office prior to award. If the contracting office receives a modification to the wage determination after receipt of proposals but prior award, at the discretion of the contracting officer, award of a contract resulting from this solicitation may be made without incorporation of the current wage determination prior to award and a modification will be issued after award to incorporate the wage determination effective as of the date of contract award.

For GOJV Use Only
Initial


General Decision Number: GU170002 07/07/2017 GU2

State: Guam

Construction Type: Heavy
Heavy Construction (Applies only to projects funded under the National Defense Authorization Act of 2010 - Guam Realignment Fund - Defense Policy Review Initiative)

County: Guam Statewide.

Note: Under Executive Order (EO) 13658, an hourly minimum wage of $10.20 for calendar year 2017 applies to all contracts subject to the Davis-Bacon Act for which the contract is awarded (and any solicitation was issued) on or after January 1, 2015. If this contract is covered by the EO, the contractor must pay all workers in any classification listed on this wage determination at least $10.20 (or the applicable wage rate listed on this wage determination, if it is higher) for all hours spent performing on the contract in calendar year 2017. The EO minimum wage rate will be adjusted annually. Additional information on contractor requirements and worker protections under the EO is available at www.dol.gov/whd/govcontracts.

| Modification Number | Publication Date |
|---|---|
| 0 | 07/07/2017 |

SUGU2016-003 02/08/2017

| | Rates | Fringes |
|---|---|---|
| CARPENTER (Form Work Only) | $ 17.04 | 0.00 |
| CEMENT MASON/CONCRETE FINISHER | $ 12.87 | 0.00 |
| ELECTRICIAN | $ 15.20 | 0.00 |
| IRONWORKER, REINFORCING | $ 12.56 | 0.00 |
| LABORER: Common or General | $ 10.36 | 0.00 |
| OPERATOR: Backhoe/Excavator/Trackhoe | $ 14.44 | 0.00 |
| OPERATOR: Mechanic | $ 16.66 | 0.00 |

For GOJV Use Only
Initial



TRUCK DRIVER: Dump Truck........$ 13.82 0.00
----------------------------------------------------------------

WELDERS - Receive rate prescribed for craft performing operation to which welding is incidental.

================================================================

Note: Executive Order (EO) 13706, Establishing Paid Sick Leave for Federal Contractors applies to all contracts subject to the Davis-Bacon Act for which the contract is awarded (and any solicitation was issued) on or after January 1, 2017. If this contract is covered by the EO, the contractor must provide employees with 1 hour of paid sick leave for every 30 hours they work, up to 56 hours of paid sick leave each year.
Employees must be permitted to use paid sick leave for their own illness, injury or other health-related needs, including preventive care; to assist a family member (or person who is like family to the employee) who is ill, injured, or has other health-related needs, including preventive care; or for reasons resulting from, or to assist a family member (or person who is like family to the employee) who is a victim of, domestic violence, sexual assault, or stalking. Additional information on contractor requirements and worker protections under the EO is available at www.dol.gov/whd/govcontracts.

Unlisted classifications needed for work not included within the scope of the classifications listed may be added after award only as provided in the labor standards contract clauses (29CFR 5.5 (a) (1) (ii)).

----------------------------------------------------------------

The body of each wage determination lists the classification and wage rates that have been found to be prevailing for the cited type(s) of construction in the area covered by the wage determination. The classifications are listed in alphabetical order of "identifiers" that indicate whether the particular rate

For GOJV Use Only
Initial



GRANITE
Granite - Obayashi, a Joint Venture

is a union rate (current union negotiated rate for local), a survey rate (weighted average rate) or a union average rate (weighted union average rate).

Union Rate Identifiers

A four letter classification abbreviation identifier enclosed in dotted lines beginning with characters other than "SU" or "UAVG" denotes that the union classification and rate were prevailing for that classification in the survey. Example: PLUM0198-005 07/01/2014. PLUM is an abbreviation identifier of the union which prevailed in the survey for this classification, which in this example would be Plumbers. 0198 indicates the local union number or district council number where applicable, i.e., Plumbers Local 0198. The next number, 005 in the example, is an internal number used in processing the wage determination. 07/01/2014 is the effective date of the most current negotiated rate, which in this example is July 1, 2014.

Union prevailing wage rates are updated to reflect all rate changes in the collective bargaining agreement (CBA) governing this classification and rate.

Survey Rate Identifiers

Classifications listed under the "SU" identifier indicate that no one rate prevailed for this classification in the survey and the published rate is derived by computing a weighted average rate based on all the rates reported in the survey for that classification. As this weighted average rate includes all rates reported in the survey, it may include both union and non-union rates. Example: SULA2012-007 5/13/2014. SU indicates the rates are survey rates based on a weighted average calculation of rates and are not majority rates. LA indicates the State of Louisiana. 2012 is the year of survey on which these classifications and rates are based. The next number, 007 in the example, is an internal number used in producing the wage determination. 5/13/2014 indicates the survey completion date for the classifications and rates under that identifier.

Survey wage rates are not updated and remain in effect until a new survey is conducted.

For GOJV Use Only
Initial

GRANITE
Granite - Obayashi, a Joint Venture


Union Average Rate Identifiers

Classification(s) listed under the UAVG identifier indicate that no single majority rate prevailed for those classifications; however, 100% of the data reported for the classifications was union data. EXAMPLE: UAVG-OH-0010 08/29/2014. UAVG indicates that the rate is a weighted union average rate. OH indicates the state. The next number, 0010 in the example, is an internal number used in producing the wage determination. 08/29/2014 indicates the survey completion date for the classifications and rates under that identifier.

A UAVG rate will be updated once a year, usually in January of each year, to reflect a weighted average of the current negotiated/CBA rate of the union locals from which the rate is based.

----------------------------------------------------------------

------

For GOJV Use Only
Initial